*H. W. King*, for the plaintiff.
*F. P. Goulding*, for the defendant.

---

LEON WEIL *vs.* MICHAEL C. GOLDEN.

Bristol.    Oct. 29, 1885. — March 31, 1886.    FIELD & C. ALLEN, JJ., absent.

If an order for intoxicating liquors is taken at the buyer's place of business in one State by an agent of the seller who does business in another State, and the liquors are delivered at the buyer's place of business, and the agent pays the freight on the liquors to the place of delivery, that place is the place of sale; and, if the sale is illegal by the laws of the State where it is made, and is made by the agent for the purpose of enabling the buyer to violate such law, the seller cannot maintain an action in this Commonwealth upon the acceptance by the buyer of a draft for the price of the liquors.

In an action upon the acceptance by the defendant of a draft for the price of intoxicating liquors sold to him by the plaintiff's agent, the answer alleged that the sale was illegal, and was made to enable the defendant to violate the law. The defendant was allowed to ask the plaintiff's agent, who was a witness, if he knew that the defendant had no license to sell liquors; and he answered that he did. The defendant then asked him, "What did the defendant intend to do with the liquors?" to which he answered, "Sell them again." The defendant further asked him, "Did you sell the goods to him to sell them again, with a view to that purpose?" to which he answered, "Yes." *Held*, that the plaintiff had no ground of exception.

CONTRACT to recover the amount of a draft drawn by the plaintiff, doing business as Leon Weil and Company at Philadelphia, Pennsylvania, March 18, 1879, at four months, upon the defendant, at Pawtucket, Rhode Island, and there accepted by him. The answer alleged that the acceptance was given for the price of intoxicating liquors sold by the plaintiff to the

defendant, to be resold by him in Pawtucket; that, at the time of the sale, no licenses for the sale of such liquors were granted in Pawtucket, and the sale thereof was illegal and contrary to law, which the plaintiff well knew; and that the plaintiff sold and delivered the liquors to the defendant with full knowledge, and intending that the same should be sold contrary to law. Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff put the acceptance in evidence, and rested.

The defendant put in evidence the Rhode Island St. of 1875, *c.* 508, and especially §§ 1, 18, 43, 44.

The defendant testified that, in 1879, he was in the grocery and liquor business in Pawtucket; that he had no license to sell liquors, and carried on business without a license; that, in March of that year, he bought five barrels of whiskey of Richard Park, who represented Leon Weil and Company of Philadelphia; that he had bought several bills of him before; that Park sold by sample, and agreed to deliver these goods in Pawtucket free of freight; that they came to him by the Clyde line from Philadelphia; and that he afterwards sold the liquors at retail in Pawtucket.

Richard Park testified that, in 1878 and 1879, he was employed by Leon Weil and Company of Philadelphia, as general agent for the sale of their liquors in New England; that he transacted all their business in New England except buying goods; that he had known the defendant many years, and had sold him several bills of liquors for Weil and Company before; that, in March, 1879, he went to the defendant's store, showed samples, and sold him five barrels of whiskey; that the defendant objected to paying freight, and he agreed to deliver the goods at Pawtucket free of freight. The defendant was allowed to ask the witness, against the plaintiff's objection, if he knew that the defendant had no license to sell liquors, and he answered that he did. He was also asked, "What did the defendant intend to do with the liquors?" The plaintiff objected, but the question was allowed, and the witness answered, "Sell them again." The defendant then asked him, "Did you sell the goods to him to sell them again, with a view to that purpose?" To this question the plaintiff objected, but the judge allowed it;

and the witness answered, "Yes." He further testified, that he paid the freight to the defendant as agent of the plaintiff, and charged it to him in his expense account.

On cross-examination, the witness testified that he had no written instructions from his employers; that he did not remember this case in particular; that he had a guaranty of $50 a week to cover expenses, which was to be paid to him whether he made any sales or not, and a commission on his sales; that his commissions depended on the price he sold for; that he sold in different ways, no freight, half freight, and with freight, and, if freight was paid by him, it affected his commissions; that the orders he took were sent to Philadelphia, and it was optional with the plaintiff to send the goods or not; and that, in the previous sales he had made for the plaintiff to the defendant, the latter was to pay freight.

It was agreed that the acceptance in suit was given in payment of the five barrels of whiskey sold by the plaintiff to the defendant in March, 1879.

There was no evidence that the plaintiff had any actual knowledge, either of the laws of Rhode Island in reference to the sale of intoxicating liquors, or that the defendant had no license and intended to sell the liquors contrary to law, or that his agent had such knowledge and took the order with intent to aid in such unlawful purpose.

The plaintiff asked the judge to instruct the jury as follows: "1. If the jury find that the liquors were sold to the defendant in Philadelphia, and the sale in Philadelphia was legal there, they must find for the plaintiff. 2. It is for the defendant to show an unlawful sale, if he would avoid the acceptance on which this suit is brought. 3. If the jury find that the plaintiff sold the liquors to the defendant, and delivered them to a transportation company in Philadelphia for the defendant, in order to make such a sale unlawful and avoid the defendant's acceptance, the jury must also find that the plaintiff knew that the defendant purchased the liquors for the purpose of unlawful sale of them in Rhode Island, and that the plaintiff, so knowing the defendant's unlawful intent, sold the liquors to him for the purpose of aiding in such unlawful sale of them by the defendant. 4. Even if the liquors were sold in Philadelphia to be sold again in

Rhode Island by the defendant, a citizen of Rhode Island, contrary to law and with the knowledge and participation of the plaintiff in such sale, this would be no defence to this action on the acceptance given for them, and such acceptance can be collected in this Commonwealth. 5. If the order of the defendant for five barrels of whiskey, at prices named, was sent to the plaintiff by Park, and filled by the plaintiff in Philadelphia without any knowledge on the part of the plaintiff that Park himself intended to pay the freight and charge it to the plaintiff as part of his, Park's, expenses, then the sale was completed in Philadelphia when the plaintiff delivered the goods to the Clyde line, and Park's undertaking with the defendant to pay the freight was a separate contract between the defendant and Park personally. 6. If the jury find that the plaintiff's agent, Park, sold the liquors to the defendant with the intent on the part of the agent to aid him in the violation of the law by their resale, this fact cannot affect the plaintiff's right to recover in this suit. 7. If the jury find that the sale of the liquors was made by the plaintiff to the defendant in Pawtucket, and that such sale was there unlawful, this is no defence to a suit brought in this State upon an acceptance given for the price of the liquors."

The judge gave the second instruction requested; refused to give the others; and instructed the jury, in substance, as follows: " At Pawtucket, if the sale was there, the sale was unlawful, if it was made for the purpose of enabling the defendant to violate the laws of Rhode Island, and the contract cannot be enforced in this State. And the sale was made in Pawtucket, if the jury believe the agent Park's story. Whether the sale was made in Pawtucket or not can make no difference, so far as the court can see, or whether Weil knew or not of the illegal use intended to be made of the liquors by the defendant, if Park knew of it; his principal is affected with his knowledge, and the plaintiff cannot recover. If the sale was made in Philadelphia, and the plaintiff's agent took the order in Pawtucket to enable the defendant to sell said liquors contrary to law in Rhode Island, and with the intent to aid him in such unlawful sale, the plaintiff cannot recover. It makes no difference if the plaintiff himself had no actual knowledge that his agent took the order to aid the defendant in such unlawful sale, if the agent had such purpose."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*C. A. Reed & J. H. Dean*, for the plaintiff.

*H. J. Fuller*, for the defendant.

W. ALLEN, J.   This case was confused at the trial and at the argument by surmises as to what might have been the effect had the sale been made in Philadelphia.   There was no evidence of a sale there.   The place of sale was where the sale was completed by delivery.   Both of the witnesses testified that the goods were to be delivered, and were delivered, in Pawtucket; and also — what is of consequence only as bearing on the question of the place of delivery — that the plaintiff was to pay, and did pay, the freight to Pawtucket.   The testimony, if believed, proved a sale made in Rhode Island, illegal and void by its laws; and the instruction that, if the sale was made in Pawtucket, and was made for the purpose of enabling the defendant to violate the laws of Rhode Island, the action could not be sustained, was all that was required.   The evidence objected to was clearly competent to show the purpose.   The plaintiff had no cause of complaint on account of the refusal to give instructions asked, or of the instructions given.   *Suit* v. *Woodhall*, 113 Mass. 391.

*Exceptions overruled.*