## DUNN vs. THE STATE OF GEORGIA.

Contracting to sell a gallon of whisky generally, taking an order for the same to be filled by delivery to a common carrier, and receiving the price, will not complete the sale. The sale is not completed until separation of the particular gallon from the common stock and delivery to the carrier. Hence, the sale is not consummated at the place where the bargain is made and the price paid, but at the place where delivery is made to the carrier, the freight being paid not by the seller but by the purchaser, and there being no contract to deliver otherwise than to the carrier at the point of shipment.

February 11, 1889.

Criminal law. Liquor. Sales. Before Judge RICH-ARD H. CLARK. Douglas superior court. January adjourned term, 1888.

Reported in the decision.

J. S. JAMES, A. BRANDT and C. D. CAMP, for plaintiff in error.

JOHN S. CANDLER, solicitor-general, for the State.

BLECKLEY, Chief Justice.

For the purposes of the present case, we may assume that the local option law for Douglas county was constitutional, and was a valid, operative statute within the county of Douglas, and still we think the offence of selling whisky contrary to that statute was not committed, according to the evidence set forth in the record. The material portion of the evidence was to the following effect: Kenny & Werner were liquor dealers in the city of Atlanta, Fulton county, and kept their store and stock in that city. Dunn was their agent and traveling salesman. He went to Douglasville, in Douglas county, taking with him a case of samples, and while there

solicited of Ward, the sheriff of the county, an order. Ward gave him an order for one gallon of whisky, and paid him $2.15 for the whisky and a jug to contain it. In this transaction no samples were exhibited. Ward testified : " He told me he was getting up orders for whisky, and wanted to know if I wanted any. I told him I had been at work hard all day, was tired and felt like I would like to have some. He told me he would get the order in for it that night to Atlanta. It was just about ten minutes before train time, and he said he could go to the depot and send an order in, and it would come the next day ; but it was two days before it came. I suppose it came in a jug on the train. I found it at the depot in the express office, and I paid the express on it. Mr. Dunn didn't deliver me any liquor at all, but it came to me from Atlanta by train." It is clear that the contract into which the parties entered contemplated no direct delivery of the whisky by the seller to the buyer in Douglasville, but a delivery to be made in Atlanta to a common carrier. And in that way delivery was actually made. The subject of the contract was no particular gallon of whisky, but a gallon of whisky generally, which was part of the common stock of Kenny & Werner kept for sale in the city of Atlanta. Until separation was made of some particular gallon from that stock, the precise subject of the executory contract of sale could not be identified, and until then no title to any whisky whatsoever passed or could pass by virtue of the contract. As soon, however, as a particular gallon of whisky was separated, in consequence of the order, from the common stock, put in a jug, and delivered to the common carrier, what was up to that time a mere executory contract of sale, became an actual or executed sale, and the title to that particular gallon passed to Ward, the buyer. It

was as completely his whisky in the hands of the express company the moment the company accepted and received it for carriage to him as consignee, as it ever was afterwards. He became the owner by reason of the delivery made to the express company in Atlanta, and not by reason of the delivery which that company made to him subsequently in Douglasville. Had the jug or its contents been lost or damaged whilst the transportation was in progress, the right of action for such loss or damage would have been in him. Had the goods, by reason of the express company's default, never arrived at Douglasville, Ward could not have recovered back the money which he paid to Dunn. His redress would have been against the carrier only. "Delivery to the carrier was a delivery to the defendant if there was no agreement to the contrary. . . But if the parties agreed that the goods were to be delivered in Lawrence, it would not be a completed sale until the delivery, and the laws of this State would apply to it." Suit *vs.* Woodhall, 113 Mass. 391. To the same effect, as to completing sale at the time and place of delivery, see Neil *vs.* Golden, 141 Mass. 364. "To complete the sale, so that the title will pass to the buyer, the goods must be separated from the bulk whereof they are a part, or in some other way be so distinguished or specified that they can be known." Bish. Cont. §1309.

Several cases decided by the highest courts of other States, in criminal proceedings, are more or less directly in point on the present case. Garbracht *vs.* Commonwealth, 96 Pa. St. 449; Sarbecker *vs.* The State, 65 Wis. 171; State *vs.* Hughes, 22 West Va. 743; Herron *vs.* The State, 10 S. W. Rep. 25. The last of these cases, which was decided by the Supreme Court of Arkansas, in December, 1888, is exactly parallel with the present case in all the essential facts, even to the

receipt of the purchase price at the time of entering into the contract.

If it be suggested that the evidence, as we have recited it above, leaves it doubtful as to whether delivery was to be made to the carrier in Atlanta or to the buyer in Douglasville, we answer that where two methods of delivery are open, one legal the other illegal, the former is to be considered as the one contemplated unless the parties by express agreement have adopted the other. Certainly is this true where one would be innocent and the other criminal.

It seems to us that in order to render prohibitory laws in reference to the dispensing and distribution of liquors effectual, in the largest degree, the contract to sell as well as the sale itself should be brought within the purview of the prohibitory statutes ; but until this is done by legislation, the courts are powerless to lend their aid, by the administration of penal sanctions, to what might be considered, and doubtless is, a sound public policy.

The court erred in treating the sale as completed in Douglas county, and in not granting a new trial.

Judgment reversed.