Swanke and others, Respondents, vs. McCarty and another, Appellants.

*December 17, 1891 — January 12, 1892.*

*Sale of lumber: Place of delivery: Who pays the freight?*

By a written contract plaintiffs, doing business at Tigerton, Wis., agreed to sell and deliver to the order of G. Bros., of Milwaukee, their entire cut of lumber. G. Bros. agreed "to send a man to inspect and measure lumber at shipping point, Tigerton," and to pay cash for the lumber. G. Bros. assigned the contract to defendants, and the lumber was shipped by plaintiffs from Tigerton to different places as ordered by defendants. *Held,* that the lumber was to be delivered by plaintiffs at Tigerton, and that they were not bound to pay the freight charges thereon from that point.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiffs, as copartners under the firm name of the Tigerton Lumber Company, doing business at Tigerton, Wis., entered into a written contract with Greilick Bros., of Milwaukee, February 16, 1888, wherein and whereby the said Tigerton Lumber Company in effect agreed, among other things, to sell and deliver "*to the order of said Grei-lick Bros.*" their entire cut of lumber therein described, shipping to commence by July 1, 1888. It was therein further agreed by Greilick Bros. to send a man to inspect and measure the lumber at the shipping point, Tigerton, Wis., and to pay cash for said lumber, less two per cent. On March 15, 1888, and before any lumber had been shipped

under said contract, the said contract was duly assigned to the defendants, doing business in Milwaukee as copartners and under the firm name of P. H. McCarty Lumber Company, by the said Greilick Bros., of which assignment the plaintiffs at the time had notice, and consented to the same.

This action was brought to recover a balance, alleged to be due to the plaintiffs under said contract, with interest from October 17, 1888. The defendants answered by way of admissions, denials, and allegations of payment, and claimed a balance their due of $113.54, and reiterated the same by way of counterclaim. The plaintiffs denied the allegations contained in the counterclaim. The cause was referred to a referee, who found, in effect, the contract and assignment mentioned; that the plaintiffs had shipped to the defendants thereunder lumber to the amount of $2,757.37; that the defendants were entitled to a discount thereon of $55.15, and had paid thereon $2,250, and were entitled to be credited with the freight advanced by them on said lumber for the plaintiffs to the amount of $565.76; and that there was a balance due the defendants of $113.54, for which they were entitled to judgment. The plaintiffs excepted to that portion of the finding of the referee which allowed to the defendants the credit for the freight mentioned. On the hearing before the court, the referee's findings were modified and changed by disallowing to the defendants the $565.76 paid by them for and on account of such freight, and judgment was ordered in favor of the plaintiffs for $452.22. From the judgment entered thereon the defendants appeal.

For the appellants there was a brief by *Rogers & Mann*, and oral argument by *C. D. Mann*.

For the respondents there was a brief by *Benj. M. Goldberg*, attorney, and *Charles Barber*, of counsel, and oral argument by *Mr. Goldberg*.

CASSODAY, J. The plaintiffs were located at Tigerton, where the lumber was manufactured. The defendants were located and did business in Milwaukee, the same as their assignors, Greilick Bros. By the terms of the contract the defendants, as assignees, were to send a man to inspect and measure the lumber at Tigerton, which was therein stated to be the "shipping point." The plaintiffs thereby agreed to sell and deliver the lumber *to the order* of Greilick Bros., and to commence the shipping by July 1, 1888. The contract having been assigned to the defendants, the agreement was to deliver the lumber to their order. As a matter of fact, they ordered some of the lumber to be shipped to Chicago, some to Sheboygan, and the balance to Milwaukee; and the lumber was shipped by the plaintiffs at Tigerton, in accordance with the respective orders so given. The only question presented is whether the plaintiffs or the defendants were to pay the freight on the respective shipments from Tigerton to the place where they were so ordered to be shipped. The referee held that the plaintiffs were bound to pay the same, and accordingly allowed the defendants credit for the amount of freight they had so paid. The circuit court held that the defendants were bound to pay the same, and modified the referee's report accordingly.

The general rule is that, where no place of delivery is designated in the contract, the articles sold are to be delivered at the place where they are at the time of sale, or, in case they are subsequently to be manufactured, then at the place where they are to be so manufactured. Benj. Sales, sec. 682. This court has held in effect that, where the contract is silent on the subject and there is nothing in the transaction indicating a different intention, and a manufacturer in one city receives, through his agent residing in another, an order for goods from a customer there, and fills the order by delivering the goods to a common carrier at the place of manufacture, consigned to such customer at

his place of residence, the sale is complete, and the title passes at the place of shipment, even though the customer, on receiving the goods at his place of residence, pays to such agent there the purchase price. *Sarbecker v. State,* 65 Wis. 174. That case has been cited approvingly in other states. *Robinson v. Pogue,* 86 Ala. 261; *Berger v. State,* 50 Ark. 23; *Herron v. State,* 51 Ark. 136; *Dunn v. State,* 82 Ga. 29. See, also, *Anderson v. Morice,* L. R. 10 C. P. 613. Indeed, it is elementary that, where the vendor is bound to send the goods to the purchaser, delivery to a common carrier is a delivery to the purchaser himself; the carrier being, in contemplation of law in such cases, the bailee of the person *to* whom, not *by* whom, the goods are sent; the latter, when employing the carrier, being regarded as the agent of the former for that purpose. Benj. Sales, secs. 693, 181.

Under the contract, the plaintiffs had nothing more to do with the lumber after such shipments. Manifestly, the title to the lumber became vested in the defendants immediately upon being delivered to the carrier at Tigerton. This certainly should be so where, as here, the contract calls for the entire cut of the plaintiffs' lumber, and no delay of payment was provided for. Since the title to the lumber passed to the defendants upon being delivered to the carrier at Tigerton, it would naturally be inferred that they would be chargeable with the cost of transportation. Certainly it would be unreasonable to hold, as a matter of law, that the plaintiffs were bound to pay the freight from Tigerton to any place the defendants might designate, merely because the contract required the shipment to be made to their order. To so hold would empower the defendants to name places of consignment to which the freight would greatly exceed the purchase price of the lumber. It may be that custom and usage, in certain cases, may operate to extend the duty of the vendor, so as to require him to carry the goods at his own expense to the purchaser or to such place as he may designate. Assuming that the evidence in

the case at bar tends to establish such custom and usage, and that the parties in some respects conducted the business as though the plaintiffs were accountable for the freight, still, after careful consideration, we are forced to hold that such evidence is insufficient to set aside the finding of the learned trial judge, and to take the case out of the general rule of law mentioned.

*By the Court.*— The judgment of the circuit court is affirmed.