## C. B. HAVENS & COMPANY v. GRAND ISLAND LIGHT & FUEL COMPANY.

FILED JUNE 6, 1894.    NO. 5557.

1. **Sales:** DELIVERY OF GOODS TO CARRIER: EFFECT.    The general rule is that the delivery of goods to a carrier consigned to the purchaser thereof is a delivery to such purchaser, and that the title of the goods so delivered to the carrier at once vests in the purchaser; but this rule is not a universal one, and whether applicable in any case, depends upon the facts, circumstances, and contract between the seller and the purchaser in the case.

2. ————: ESTOPPEL.    It seems that a defendant sued on a contract for goods of a certain quality and price is estopped from interposing the defense that the goods were inferior in quality to those he had contracted for when it is shown that he, without protest or objection, converted to his own use the goods furnished him under said contract, and the defect in such goods was apparent on inspection.

3. ————: EVIDENCE.    The evidence in this case examined, and *held* to support the findings of the jury, that the coal sued for herein was to be delivered at Grand Island, and that the coal delivered was inferior in quality to that contracted to be delivered.

ERROR from the district court of Hall county.    Tried below before COFFIN, J.

*Bartlett, Crane & Baldrige* and *Martin Langdon,* for plaintiff in error.

*Abbott & Caldwell, contra.*

RAGAN, C.

In October, 1889, C. B. Havens & Co. were coal merchants in the city of Omaha and the Grand Island Light & Fuel Company was a corporation engaged in the manufacture of gas and dealing in coal in the city of Grand Island.    On the 12th day of October of said year Havens

& Co. wrote a letter to the fuel company as follows: "We had two cars of grate coal shipped on our account from mine to consumer of ours, who reports that the coal is a little too large size for his use. Knowing that you prefer the larger sized grate coal, we will make you offer of $9.85 on these two cars if you can receive them between the 20th and 30th of this month. The coal is straight D. L. and W. Scranton, fresh from the mine. Please advise us at your early convenience." On the 15th of October the fuel company answered this letter as follows: "Your letter of the 12th inst. at hand. You may ship the two cars of hard coal at price named in your letter." On the 16th of October Havens & Co wrote to the fuel company the following letter: "We have your favor of the 15th and have entered your order for two cars of grate coal at $9.85 per ton, F. O. B. Grand Island. Will have the cars forwarded to you in a few days." In pursuance of this correspondence Havens & Co. shipped to the fuel company two cars of coal. One car was numbered 29390 and contained 29,010 pounds of coal. This car of coal is only incidentally involved in this action, as it was accepted by the fuel company and paid for. The other car shipped by Havens & Co. was a car numbered 6855, and claimed by them to contain 29,680 pounds of coal. It was to recover for this last car of coal that this action was brought. The fuel company defended on the grounds that they did not receive as much coal as sued for, and that the coal received was inferior in quality to that which Havens & Co. agreed to furnish by their contract. Havens & Co. had a verdict for $8.13, on which judgment was rendered, and they bring the case here for review.

1. The first, second, and third errors assigned are that the verdict is not sustained by sufficient evidence and is contrary to the law of the case. There is practically no dispute but that the car of coal delivered to the fuel company did not contain the amount of coal sued for; and the

evidence supports the finding of the jury that the coal delivered was inferior in quality to that contracted for. Counsel for Havens & Co., however, contend that the title to the coal vested in the fuel company when it was delivered to the carrier at Omaha, and that if the coal received by the fuel company was inferior in quality or less in amount than the coal delivered to the carrier at Omaha, that such loss and depreciation must be borne either by the carrier or the fuel company.    The general rule doubtless is that the delivery of goods to a carrier consigned to the purchaser is a delivery to the purchaser, and that the title of the goods so delivered to the carrier at once vests in the purchaser; but this rule is by no means universal, and whether applicable in any case, depends upon the facts, circumstances, and the contract between the seller and the purchaser in the case.    But if we consider that the title to this car of coal sued for vested in the fuel company at the moment it was consigned to the carrier at Omaha by Havens & Co., we do not see how that would help the plaintiff in error here.    To make the fuel company or the carrier bear the loss resulting from the inferior quality of coal and its depreciation in amount the plaintiffs in error would have to show that they delivered the amount of coal sued for to the carrier at Omaha, and that the coal delivered was of the quality called for by the contract; and the evidence in the record does not show either one of these facts.    The fuel company was not to pay for this coal by the car, but to pay so much per ton for it, and the coal was to be of a certain quality, and if Havens & Co. delivered this coal to the fuel company at Omaha, then the fuel company is not compelled to pay for any more coal than was delivered to it at Omaha, and not compelled to accept or pay for coal inferior in quality to that purchased.

Another argument under this assignment of error is that the fuel company accepted and used the coal shipped without protest and is now estopped from alleging that the coal

received was inferior in quality to that called for by the contract. If one contracts for property of certain quality, and on receiving it accepts and uses such property without any protest or objection, such act affords very strong evidence, indeed, either that the goods purchased came up to the standard of those contracted for, or that their inferiority was waived; and it may be that a defendant, when sued on a contract for goods of a certain quality and price, would be estopped from interposing the defense that the goods were inferior in quality to those he had contracted for, when it was shown that he had, without protest or objection, converted to his own use the goods furnished him under the contract, and the defects therein were apparent on inspection. In the case at bar the evidence shows that the car of coal sued for and the car with which it was shipped reached the city of Grand Island on the 6th of November, but was not delivered to the fuel company until the 14th, at which time the two cars were unloaded into bins of the fuel company; and on that date it wrote a letter to Havens & Co., as follows: "We have just received Wabash car 6855. This car has been in wreck and is still broken at the end. We believe that the coal is short from one and a half tons to two and a half tons. Before we accept this coal we want you to wire the Union Pacific agent and make the shortage good, or sell it to other parties." On the same day Havens & Co. answered this letter with a communication as follows: "Referring to your favor of the 14th in which you say Wabash car 6855 has been received and evidently been in a wreck, will say we have seen Mr. Van Kuran, auditor Union Pacific railway, to-day concerning this and he will take the matter up at once and if the car is damaged will have the coal weighed out to you by the agent at Grand Island, and he promises to attend to the same to-morrow." On the 25th day of November following the fuel company wrote another letter to Havens & Co., inclosing them the pay for the car of

good coal shipped with the car No. 6855, and in this letter the fuel company said: "We claim shortage of 1,280 pounds. This car of coal is no good, and you must make us a discount. We would not buy this class of coal at any price. We in fact can hardly make use of any of it." On the 26th of November Havens & Co. answered this letter, acknowledging receipt of the pay for the car of good coal, and in the letter said: "Relative to Wabash car 6855, we can do nothing in this matter until you send us expense bill on the same." Nothing was said in the letter in any manner about the inferior quality of the coal. We do not think that this evidence shows such an acceptance of the coal by the fuel company as would estop it from alleging in this suit the defense of the inferior quality of the coal.

2. The fourth and fifth errors alleged are assigned in the following language: "The court erred in sustaining objections made by the defendant to the evidence offered by the plaintiff and in overruling objections made by plaintiff to evidence offered by defendants." These assignments are too indefinite for review. The rule of this court many times announced is that if a litigant is of opinion that the trial court erred in its ruling and desires to review such error in this court, he should specifically state in his petition in error here what action of the district court he claims was erroneous. (*Haskell v. Valley County,* 41 Neb., 234.)

3. The sixth error alleged is assigned in this language: "The court erred in giving instructions given by the court on its own motion, Nos. 1, 2, 3, 4, and 5." Some of these instructions were properly given, and under the rule laid down in *Hiatt v. Kinkaid,* 40 Neb., 178, and *McDonald v. Bowman,* 40 Neb., 269, as the objection goes to the instructions *en masse,* we will not consider the error alleged further than to ascertain if any one of them is good.

4. The eighth assignment of error is in the following language: "The court erred in giving instructions that there was a contract to deliver goods to defendant at Grand

Island." What has already been said sufficiently disposes of this assignment.

5. The ninth error alleged is as follows: "Defendant did not plead a contract to deliver said coal at Grand Island, and the court erred in finding the same." It is not stated in any of the pleadings in the case at what place this coal was to be delivered, and if the jury found from the evidence that the coal was to be delivered at Grand Island, we think the evidence ample to sustain that finding. By the letter of October 16, written by Havens & Co. to the fuel company, it is stated: "We have your favor of the 15th and have entered your order for two cars of grate coal at $9.85 per ton F. O. B. Grand Island." The evidence shows that the total cost of this coal to the fuel company was to be $9.85 per ton at Grand Island; and it also appears from the record that Havens & Co. accepted from the fuel company, as part payment of the other car of coal shipped with the one in suit, the freight bills for the coal turned over by the carrier to the fuel company. To adopt the contention of counsel that by the terms of the contract the fuel company was to pay $9.85 a ton for the coal at the place of delivery, and that that place of delivery was Omaha, would make the coal cost the fuel company in Grand Island about $16 per ton, as the evidence shows that the carrier's charges amounted to about $6 per ton.

6. The tenth, and last, assignment of error is as follows: "The court erred in refusing to give instructions Nos. 1, 2, 3, and 4, asked for by the plaintiff." At least three of these instructions should not have been given, and for reasons already assigned we will not determine whether or not there was any error in the refusal of the court to give the other two. The judgment of the district court is

AFFIRMED.