|456:40 L.R.A 546

## THE. KNAPP ELECTRICAL WORKS

*v.*

## THE NEW YORK INSULATED WIRE COMPANY.

*Filed at Ottawa October 11, 1895.*

CONTRACTS—*construction*—*liability of consignee of goods for sale, for freight on goods returned.*    A consignee of goods for sale on commission, whose contract requires him to pay freight in the first instance, is not entitled to a return of freight which had been paid by him upon the goods that were, by mutual consent, returned upon termination of the contract, notwithstanding by the terms of the contract he could have retained and sold the goods on hand at the date of such termination.

*Knapp Electrical Works* v. *Insulated Wire Co.* 57 Ill. App. 82, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

KNIGHT & BROWN, for appellant.

O. M. SMITH, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This action of assumpsit was brought by appellee, against appellant, in the Superior Court of Cook county, to recover an alleged balance due on account. The judgment was for the plaintiff, its damages being fixed at $1113.37. The defendant appealed to the Appellate Court, and that court affirmed the judgment below, but reduced the amount to $1031.48, and required the appellee to pay the costs of the appeal. The defendant below again appeals.

Appellant is an Illinois corporation, manufacturing and dealing in electrical appliances and material at Chicago. Appellee, also a corporation, organized under the laws of New York, is engaged in the business of manufacturing insulated wires for electrical purposes. On the 31st day of March, 1890, these corporations entered into a contract, whereby appellant agreed to become the selling agent for appellee at Chicago, the latter agreeing to put in a stock of its wires, tapes and other goods on consignment to said second party, to be held in stock as the property of the first party and on conditions therein stated, the second party agreeing "to accept such merchandise on consignment, and to pay said first party for the same at the following rates and prices." Then followed a list of rates and prices, and the letters and words, "F. O. B. Wallingford, Conn., or N. Y.—No charges for cases." The contract also provided that it should continue until terminated by sixty days' notice from either party to the other, upon the expiration of which

sixty days the contract should absolutely end, except "that the party of the second part shall have the right to sell, on the terms aforesaid, any merchandise it may then have on consignment from the party of the first part under this contract, and the second party shall make returns and payments on all sales of such merchandise until all the same is sold in the manner provided in this contract. Upon the sixty days' notice terminating this contract being given by either party, no further goods shall be consigned after date of notice." Business was conducted under the contract until April 23, 1891, when appellant gave notice of its desire to terminate the same, adding to its notice the following: "Kindly advise us, at your convenience, as to the disposition of the goods now in our possession belonging to you." Appellee, in reply to such notice and request, on the 25th of the same month wrote : "We beg to acknowledge receipt of your favor of the 23d instant, notifying us of your wish to terminate the agency contract dated March 31, 1888; also that you are ready to deliver at once all goods held on consignment from us. We accept your proposition immediately, and have written our Mr. Godfrey to call on you and check off the account, so as to relieve you as soon as possible of our goods. Having no disposition to delay your new arrangement, we with pleasure waive the sixty days' notice provided for in the contract." The goods on hand were turned over to Godfrey, amounting, as appellant contends, to $32,413.36. Appellee afterward claimed a balance due it for goods consigned to appellant and not re-transferred nor accounted for under the terms of the contract, and to recover such balance it brought this action.

By a stipulation between the parties the only controversy upon the trial was, first, whether the defendant was entitled to a credit of $708.81 freight and $54.50 cartage paid by it on the goods consigned to it by the plaintiff and subsequently returned upon the termination of

the contract; and second, whether the goods actually returned to the plaintiff amounted to $32,413.36, as claimed by the defendant, or only to $32,125.97, as insisted upon by the plaintiff. The trial court decided both of these questions adversely to the defendant, and the correctness of that decision was challenged by assignments of error in the Appellate Court, which are renewed here.

The second of these questions has been eliminated from the case by the decisions of the courts below, being purely a question of fact. The contention of appellant on the first is, that by a proper construction of the contract of March 31, 1890, appellee is liable for the freight and cartage upon the goods consigned, and even if that is not so, it should be held liable under the facts and circumstances under which the goods were returned to it. The words in the contract, "F. O. B. Wallingford, Conn., or N. Y.," seem to be conceded to mean "free on board," etc., and if they do not mean that appellee was to furnish the goods to be consigned at those places free on board cars, it is impossible to determine what they do mean. We entertain no doubt that a fair construction of the contract is, that appellant was to pay whatever charges might be incurred in transporting the goods from Wallingford or New York to its place of business in Chicago, appellee only contracting to deliver them at those places on board the cars.

But counsel say, even if this is so, inasmuch as by the terms of the contract appellant was entitled, upon notice by either party to terminate the same, to go on and sell the goods on hand, accounting only for the proceeds of the sales, and inasmuch as appellee consented to receive back such goods immediately, it should pay the freight and cartage on the same. Conceding that this question is presented as one of law by the holdings of the trial court, it seems clear that the position is untenable. When appellant gave notice of terminating the contract it expressed a desire to immediately return the goods on hand,

thus waiving its right, under the contract, to proceed with the sale thereof, and appellee acceded to that wish. Not only so, but confessedly the return was made and accepted without any claim on the part of appellant that it was entitled to receive back money paid for freight or cartage charges. There being nothing in the contract giving it the right to charge such items to appellee, and an absence of all proof tending to show that it was the intention of the parties, at the time of the re-delivery, that they should be thus paid, we are at a loss to perceive upon what principle it can be insisted that they should have been recovered. As we have already seen, the contract, upon its face, does not make appellee liable for these charges. The immediate re-delivery of the goods on hand being by mutual consent, how can appellant be heard to say the contract was thereby changed so as to entitle it to recover that which before it had no right to?

Neither of the errors assigned can be sustained, and they were properly overruled by the Appellate Court. Its judgment will accordingly be affirmed.

*Judgment affirmed.*