## HUNTER BROTHERS MILLING COMPANY V. KRAMER BROTHERS.

No. 14,144.   (80 Pac. 963.)

### SYLLABUS BY THE COURT.

1. CONTRACT—*Sale—Delivery—Title.*  If under a contract of sale the seller is to deliver the property sold at a designated place, and receive payment on delivery, the general rule is that the title will not pass until delivery is there made.

2. ——— *Agreement Construed.*  An agreement to sell property at a certain time, for a stated price, "f. o. b." at a distant place, implies that the seller will place the property on the cars and ship to the designated point free of any expense to the buyer.

3. ——— *Proof of Intention.*  In an agreement to sell and ship property to a distant point, where no express provision was made for a delivery of the property, the fact that the seller was to pay the freight and furnish the property at the destination for a specified price is some evidence tending to prove an agreement to deliver the property at that place, and that the title was not intended to pass until delivery was made.

Error from Sumner district court; CARROLL L. SWARTS, judge.  Opinion filed May 6, 1905.  Reversed.

### STATEMENT.

ACTION brought by the Hunter Brothers Milling Company to recover from Kramer Brothers $900 as damages for failure to deliver bran purchased from the defendants and paid for by the plaintiff.  The milling company was engaged in business in St. Louis, and on May 13, 1903, Kramer Brothers, who were in the milling business at Wellington, Kan., sent the following telegraphic message, in cypher, which when translated read:

"WELLINGTON, KAN., May 13, 1903.
*"To Hunter Brothers, St. Louis, Mo.:*
"We offer to sell you 1200 sacks of bran for 74 cents per sack delivered in St. Louis, and to be shipped in the month of May.       KRAMER BROTHERS."

In response to this telegram Hunter Brothers sent the following message:

"ST. LOUIS, MO., May 13, 1903.
"*To Kramer Brothers, Wellington, Kan.:*
"We offer to pay you 73 cents per hundred-pound sack of bran, and 80 cents per hundred-pound sack of your best white middlings, delivered in East St. Louis in May. Answer by telegram immediately, and send samples. 　　　　　　　HUNTER BROTHERS."

To this offer Kramer Brothers replied by wire:

"WELLINGTON, KAN., May 13, 1903.
"*To Hunter Brothers, St. Louis, Mo.:*
"We accept your offer of 73 cents per hundred pounds, sacked bran, delivered in East St. Louis, May delivery, and will send you 1600 sacks. Send instructions immediately. 　　　　　KRAMER BROTHERS."

In confirmation of their first telegram Hunter Brothers sent the following letter:

"ST. LOUIS, MO., U. S. A., May 13, 1903.
"*Messrs. Kramer Brothers, Wellington, Kan.:*
"GENTLEMEN—We have your telegram, 'Offer 1200 sacks bran 74, East St. Louis, May shipment.' We wired you offering 73c. for bran, 100s, and 80c. for your white middlings, 100s, East St. Louis, for May shipment, and stated to send samples.

"We now await your reply.
　　　　　Yours truly,　　　HUNTER BROTHERS."

Kramer Brothers also wrote a letter confirming their second telegram, stating:

"WELLINGTON, KAN., 5-13-1903.
"*Hunter Brothers, St. Louis, Mo.:*
"GENTLEMEN—By exchange of telegrams we confirm sale to you of 1600 sacks of bran, May shipment, 73c., f. o. b. St. Louis. Please send shipping instructions as early as possible, and oblige,
　　　　　Yours truly,　　　KRAMER BROTHERS."

Following the telegram of acceptance Hunter Brothers wrote the following letter:

"ST. LOUIS, MO., U. S. A., May 13, 1903.
"*Messrs. Kramer Brothers, Wellington, Kan.:*
"DEAR SIRS—We have your telegram, 'Accept 73, sacked bran, 1600 sacks. Send instructions immedi-

ately.' We mail you our stencil; mark each and every sack with same. Load the cars twenty tons to each, and bill care C. & A., East St. Louis. The sacks must be new. Do not forget to use the stencil. For your middlings like your former make we can pay you 80c., East St. Louis.      Yours truly,

HUNTER BROTHERS."

Then followed this postal card:

"Office of Kramer Brothers,
ÆTNA MILLS.
"WELLINGTON, KAN., May 16, 1903.
*"Hunter Brothers, St. Louis, Mo.:*
"We are in receipt of your valued order of 5-14-03 for 1600 sacks bran for St. Louis, Mo. We will enter order at once for shipment as directed.
"Please accept thanks.

Very respectfully yours,
KRAMER BROTHERS."

This was answered by a letter from Hunter Brothers:

"ST. LOUIS, MO., U. S. A., May 18, 1903.
*"Messrs. Kramer Bros., Wellington, Kan.:*
"DEAR SIRS—We have your postal of 16th. All our purchases are made, 'Delivered East St. Louis.' Kindly bear this in mind.      Yours truly,

HUNTER BROTHERS MILLING COMPANY."

Within a few days Kramer Brothers loaded and shipped to the Hunter Brothers Milling Company four cars of bran. When the bills of lading were received by the milling company it remitted to Kramer Brothers the entire amount due on the four car-loads. Only two car-loads were received, and the remaining two appear to have been caught in the flood, and the bran destroyed. In the meantime bran had greatly advanced in price, and this action was brought to recover the damages sustained by the failure to deliver the two cars of bran. After hearing the evidence offered on behalf of the plaintiff the court sustained a demurrer thereto, and gave judgment in favor of the defendants. The plaintiff alleges error.

*J. S. Dey,* and *Jamison & Thomas,* for plaintiff in error.

*C. E. Elliott,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:   The plaintiff bought and paid for four car-loads of bran, only two of which it received. The defendants acknowledge that payment was made for all of the bran, and concede that one-half of it never reached the plaintiff.   It was all sacked and shipped under the contract in accordance with plaintiff's directions, and the question in dispute is, Who was the owner of the bran while it was in transit?   If the plaintiff acquired the bran and became the owner from the time the shipment was made at Wellington it must bear the loss; but, on the other hand, if the bran was to be delivered at East St. Louis, and title was not to pass until delivery there, the loss must be borne by the defendants, and the plaintiff is entitled to recover.

The contract of the parties is contained in the telegrams and letters included in the statement.   The intention of the parties necessarily governs in determining when the title passed.  We must look to their correspondence to ascertain their intention with respect to the place of the delivery and the time of the passing of the title to the property.   In the absence of a stipulation or of restrictions respecting the transfer of title a sale of the property designed for shipment, and the delivery of the same to a carrier, consigned to the purchaser, will ordinarily constitute a delivery to the purchaser and operate to transfer the title to him.   If under the contract the seller is to deliver the thing sold at a designated place, and receive payment on the delivery, the general rule is that the title will not pass until delivery is there made.

In this transaction the correspondence indicates with reasonable clearness that the defendants were to

put the bran in sacks and lay it down in East St. Louis for a specified price. The telegraphic offer of plaintiff was to the effect that if defendants would deliver bran in one-hundred-pound sacks, without limit as to quantity, in East St. Louis, in May, the plaintiff would pay them at the rate of seventy-three cents per hundred. The offer was accepted in a telegram that, as the witness translated it, specified a delivery in East St. Louis, and fixed the quantity sold at 1600 sacks. In connection with the telegrams the letters confirming them plainly contemplated a delivery by the defendants at East St. Louis. In the one written by defendants confirming the sale, after specifying the quantity sold, the time of shipment, and the price, there followed the expression "f. o. b. St. Louis." Some complaint is made that the plaintiff was not permitted to show the meaning of the characters "f. o. b." Some of the courts have accepted proof as to the meaning of the letters when used by parties in a business contract, while others have deemed them to be in such general use in contracts of sale, and so well understood, that their meaning is a matter of common knowledge, of which the courts must take notice. We are inclined to the view that in contracts of this character judicial knowledge may be taken of these characters, and that parol evidence is ordinarily not needed in their interpretation. If outside proof, however, was necessary, it appears that the court in one instance overruled an objection to this class of testimony, and allowed the interpretation given by the witness to stand. That interpretation conforms to the one that is generally understood in the business world, and that is "free on board," and as used in this contract would signify free on board the cars at East St. Louis.

The contract for the sale of the bran, then, determined the quantity, the quality, the price, and the place of delivery, and showed that the delivery was to be

made free on board the cars at East St. Louis, and not at the place of shipment. If the contract by its terms had not expressly provided for a delivery of the bran by defendants at East St. Louis the fact that the defendants were to pay the freight and furnish the bran at that place for a specified price, without cost to the plaintiff, would be some evidence tending to prove an agreement to deliver the bran there, and that the sale was not complete until the delivery was made. In such a case the railroad company would be deemed to be the agent of the defendants, and not of the plaintiff. The case of *Suit v. Woodhall,* 113 Mass. 391, involved a contract for the sale of liquors, and there was testimony that the plaintiff, who was the seller, was to pay the freight to the place of destination, and the trial court refused an instruction to the jury that if they found the plaintiff was to pay the freight and deliver the property to defendants at their place of business the sale was made there. The refusal so to instruct was held to be error. The court said:

"Delivery to the carrier was a delivery to the defendants, if there was no agreement to the contrary. . . . But if the parties agreed that the goods were to be delivered in Lawrence, it would not be a completed sale until the delivery, and the laws of this state would apply to it." (Page 394.)

In another case the same court held that one who makes and sells an article to another, agreeing to deliver it at the place of business of the buyer, is liable for any injury or loss occurring in the transportation of it, although at the time of making the contract for the article nothing was said about delivery. (*Taylor v. Cole,* 111 Mass. 363.) In *Brewing Association v. Nipp,* 6 Kan. App. 730, 50 Pac. 956, it was said:

"Ordinarily a delivery of merchandise to the carrier is a delivery to the purchaser; but when the seller pays the freight the carrier is his agent and the delivery is made at the place of its destination."

In this case the defendants were to pay the freight to East St. Louis, where the bran was to be delivered at a fixed price, without charge, cost or expense to the plaintiff. The rule, as stated at page 1050 of volume 24 of the American and English Encyclopedia of Law, is as follows:

"If by the terms of the contract the seller is required to send or forward or deliver the goods to the buyer, the title and risk remain in the seller until the transportation is at an end or the goods are delivered in accordance with the contract, after which time the title is vested in the buyer."

(See, also, *Bloyd v. Pollock*, 27 W. Va. 75; *Miller, Appellant, v. Seaman et al.*, 176 Pa. St. 291, 35 Atl. 134; *Sheffield Furnace Co. v. Hull Coal & Coke Co.*, 101 Ala. 446, 14 South. 672; *Capehart et al. v. Furman Farm Improvement Co.*, 103 id. 671, 16 South. 627, 49 Am. St. Rep. 60; *Murray v. J. J. Nichols Manuf. Co.*, 11 N. Y. Supp. 734; *Knapp Electrical Works v. Wire Co.*, 157 Ill. 456, 42 N. E. 147; *Brewing Co. v. De France*, 91 Iowa, 108, 58 N. W. 1087, 28 L. R. A. 386, 51 Am. St. Rep. 329; *Weil v. Golden*, 141 Mass. 364, 6 N. E. 229; *Havens v. Grand Island Light & Fuel Co,*. 41 Neb. 153, 59 N. W. 681; *Westman Mercantile Co. v. Park*, 2 Colo. App. 545, 31 Pac. 945; 2 Benj. Sales, §1040; Newmark, Sales, §166.)

There was some confusion in the testimony as to whether delivery was to be made in St. Louis or East St. Louis, but the statements made by the parties in the later communications, and the shipment of the bran to East St. Louis by defendants, show that the latter place was understood by both parties to be the place of delivery.

In view of the correspondence and the circumstances developed by the testimony it is manifest that the contract required the defendants to make delivery in East St. Louis, and that the title to the bran would not pass until it reached that place. There was certainly evi-

dence to take the case to the jury, and, therefore, the judgment sustaining the demurrer to plaintiff's evidence is reversed, and the cause remanded for further proceedings.

All the Justices concurring.