Olson v. Wabash Coal Co.

## O. M. Olson v. Wabash Coal Company.

### Gen. No. 4,589.

1. CONTRACT—*for delivery of merchandise construed.* Held, that the particular contract in question in this case required delivery to the vendee at his home town and that he was not required to look to the carrier for delay in delivery.

2. CONTRACT—*printed words upon letter not competent to affect.* The following printed words upon a letter are not competent to vary the explicit terms contained in the letter itself:

" Quotations not binding until orders are accepted and are then subject to all contingencies beyond our control, advances in mining or rates of transportation. Invoice weights at point of shipment to govern settlements."

3. ACCORD AND SATISFACTION—*when does not appear.* In an action to recover the purchase price of merchandise in part rejected, a check given by the vendee and accepted by the vendor containing these words: " To balance account coal received from you to date," does not

show an accord and satisfaction, inasmuch as the check only purported to pay in full for " coal received."

4. VENDOR AND VENDEE—*remedies of former when latter wrongfully refuses to accept merchandise.* Where the vendee is bound to accept at the place of delivery, but wrongfully refuses so to do, the vendor has a choice of three courses: (1) he may store the merchandise for the vendee and notify him of having done so and may then sue for and recover the full purchase price; or (2) he may keep the merchandise and recover the excess, if any, of the contract price over the market price at the time and place of delivery; or (3) he may sell the merchandise to the best advantage and recover the loss from the vendee if the merchandise fails to bring the contract price.

Action of assumpsit. Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1905. Reversed and remanded. Opinion filed March 10, 1906. Rehearing denied April 18, 1906.

J. C. MURPHY and BENJAMIN P. ALSCHULER, for appellant; C. F. CLYNE, of counsel.

JOHN M. RAYMOND and JOHN K. NEWHALL, for appellee; WILSON & WALL, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

The Wabash Coal Company has its office at Quincy, and operates a coal mine at Dawson, Illinois. O. M. Olson is a retail dealer in coal at Aurora, and had bought coal of the former for some years before the matter now in litigation. In February, 1903, Olson ordered certain cars of coal from the company, and the latter accepted the order and shipped four cars. When the coal reached Aurora Olson's men had partly unloaded one car before he knew it and he therefore kept and paid for that car. But because of the great length of time between the order and the arrival of the coal at Aurora, Olson refused to receive the other three cars. The company brought this suit against Olson to recover the price of said three carloads of coal, and had a verdict and a judgment for $350.82, the full amount of its claim, from which judgment Olson appeals.

The first question in dispute is the terms of the contract. Appellant ordered these cars after receiving a letter from appellee containing these words: "Until otherwise ad-

vised the price on coal for future orders will be $4 for
lump and nut, and $2.50 for pea coal, f. o. b. E., J. & E.
tracks, your station." In accepting the order as to the
lump and nut coal, appellee stated: "We cannot make
the pea coal any lower than $2.75 per ton f. o. b. E., J. &
E. tracks, Aurora," showing clearly that the words "your
station" in the former letter meant "Aurora." Appellant
contends that this language required appellee to deliver the
coal on cars on the tracks of the Elgin, Joliet & Eastern
Railroad at Aurora, and that the delay was therefore ap-
pellee's delay, and justified appellant in refusing to receive
the coal. Appellee contends that the quoted words only
meant that the prices named would be the price of the coal
on board cars at Aurora, and that appellee would pay the
freight from the point of shipment to Aurora, and did not
mean that the delivery was to be at Aurora; and that,
when appellee shipped the coal at Dawson consigned to
appellant, it was there delivered to appellant, and if any
unreasonable delay occurred in its transmission he must
look to the railroads for relief in that respect, and must
take and pay appellee the agreed price for the coal, no
matter how great and inexcusable the delay in transmis-
sion. In Summers v. Hibbard & Co., 153 Ill. 102, the
seller, writing from Ohio, to the buyer in Chicago, accepted
an offer made for certain merchandise, and then said:
"Prices, No. 27 at $2.80; 26 at $2.70; 24 at $2.60; f. o. b.
cars, Chicago." It will be observed that this provision
"f. o. b. cars, Chicago," is used in direct connection with
the statement of the price, which is also the case in the
contract now before the court, concerning which appellee
argues that the use of those words in connection with the
price shows it was the price at Aurora only which was re-
ferred to, but that those words had no relation to the sub-
ject of delivery, and that notwithstanding those words the
delivery was at the mine where the coal was loaded on the
cars for transmission to Aurora. But the clause of the
acceptance above quoted from Summers v. Hibbard & Co.,
*supra*, was referred to by the court as follows: "Here

there was a written provision that the iron was to be delivered free on board the cars at Chicago." In Knapp Electrical Works v. New York Insulated Wire Co., 157 Ill. 456, a contract between the parties, after a list of rates and prices for certain goods which the first party, a New York corporation, was to consign to appellee, doing business in Chicago, contained these letters and words: "f. o. b. Wallingford, Conn., or N. Y." The court held that the first party thereby contracted to deliver the goods on board the cars at Wallingford or New York. In 13 Am. & Eng. Ency. of Law, 2nd Ed., 726, it is said: "The initial letters F. O. B. in contracts of sale when the property is to be transported mean free on board the cars at a designated place, whether that be the initial point of shipment or place of final destination. They imply that the buyer shall be free from all the expenses and risks attending the delivery of the property at the point named in the contract for such purpose." This is in harmony with Devine v. Edwards, 101 Ill. 138, where it is held that where the property is to be shipped by the seller to the place of business of the purchaser, at the expense of the seller, then the place of delivery is the business place of the purchaser. In 21 Am. & Eng. Ency. of Law, 1st Ed., 530, note, it is said: "Where the contract provides that the seller shall ship the goods to the place of business of a buyer and pay the freight, the place of delivery is the place of business of the buyer, and the seller can maintain no action until he has complied with this duty. Any loss on the way must fall on the seller." To our minds it seems entirely clear that the words "f. o. b. cars Aurora" were used as a short expression to indicate the place where the seller was to deliver the goods as well as the fact that the expense of their delivery at that point was to be paid by the seller. If appellee's letter had only said "f. o. b. cars" that would have meant a free delivery on board cars of a common carrier at the point of shipment, for the general rule is that delivery of personal property by the seller to a common carrier to be conveyed to the purchaser is a delivery to the purchaser,

and title vests in the purchaser immediately upon such delivery to the carrier. City of Carthage v. Duvall, 202 Ill. 234; L. S. & M. S. Ry. Co. v. Nat. Live Stock Bank, 178 Ill. 506. But here the offer was not merely at a certain price "f. o. b. cars," but "f. o. b. E., J. & E. tracks, your station," meaning "f. o. b. E., J. & E. tracks, Aurora." Let us suppose the extreme case that those cars had been wrecked while in transit, and had never reached Aurora at all. Could it then be said that there had been a fulfillment by appellee of its contract that this coal should be $4 per ton free on board cars at Aurora? It seems to us manifest that no coal having reached Aurora appellant would owe appellee nothing, but the loss would fall on appellee, and that it would be the one to look to the railroad company for redress. If the coal never reached Aurora appellee never had the coal "f. o. b. E., J. & E. tracks, Aurora." But if in such case appellant would not be liable to pay for the coal, that would only be because the contract really means the coal shall be delivered on board cars at Aurora. Such being our conclusion, we are unable to follow the majority opinion in Neimeyer Lumber Co. v. B. & M. R. R. Co., (Neb.) 40 L. R. A. 534, but hold the contract required delivery on board cars of the E., J. & E. Ry. at Aurora, and that the delay was therefore at the risk of appellant. Whether such delay was so unreasonable, under all the circumstances then existing, that appellant was warranted in refusing to receive the coal, was a question of fact to be determined by the jury under proper instructions as to the time which the law gives the shipper in which to make delivery, and as to the legal rights of a buyer suffering from delay in delivery.

The letter in which appellee quoted prices to appellant in response to which appellant gave this order, and the letter in which appellee accepted the order as to the lump and nut coal, but announced an advance in price as to the pea coal, each had much printed matter on the letter head, and also had printed on the margin at the side of the letter head, or else at the side of the letter (and the bill of ex-

ceptions states it both ways in different places), the following words : "Quotations not binding until orders are accepted and are then subject to all contingencies beyond our control, advances in mining or rates of transportation. Invoice weights at point of shipment to govern settlements." The court admitted this printed matter in evidence, for appellee, over the objection and exception of appellant. We are not prepared to say that the court erred in permitting the whole letter, including the marginal printing, to go in evidence, as it was a part of what appellee mailed to appellant and appellant received. But as these printed words are not referred to in the body of the letter, and as they are obviously inconsistent with the offer made in the letter itself to deliver the coal at Aurora free on board cars, it is clear that under the principles laid down in Summers v. Hibbard & Co., *supra*, and under the evidence before us, the printed words do not modify the written contract. As said in the case just cited: "Here there was a written provision that the iron was to be delivered free on board the cars at Chicago. Suppose it had been printed on the letter head that the manufacturers would not be responsible for iron after a delivery to a common carrier, would not the written provision have governed the contract?" The court therefore should have given an instruction offered by appellant that under the evidence the marginal words above quoted did not form a part of the contract. The indorsement by the court upon the instruction showed that it was refused, besides other reasons, because presented too late in violation of a rule of court. On the motion for a new trial it was shown there was no such rule of court. This brings that reason assigned by the court within the case of Chicago Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573.

After the final refusal of appellant to receive the coal he remitted certain drafts and freight bills to appellee, saying in his letter "to balance acct. coal received from you to date." Appellée retained the drafts, and appellant argues this was an accord and satisfaction, under Ostrander v. Scott, 161 Ill. 339. As the remittance only purported to

be in full of "coal received" and as appellant did not receive this coal, there was no accord and satisfaction resulting from the retention of the remittance.

If the jury decide that appellant was not required to receive the coal because of the delay in having it on board cars at Aurora for delivery, then appellee will not be entitled to recover, as appellant did not receive it. If, however, the jury decide the delay did not excuse appellant from acceptance, another question remains to be investigated in order to ascertain the damages. In such a case, where the buyer was bound to accept at the place of delivery, but wrongfully refused to do so, the seller had a choice of three courses: (1) It could store the coal for the buyer, and notify him it had done so, and it could then recover the full contract price; (2) it could keep the coal and recover the excess, if any, of the contract price over the market price at the time and place of delivery; (3) it could sell the coal to the best advantage as the agent of the buyer, and recover the loss from the buyer, if the coal failed to bring the contract price. Ames v. Moir, 130 Ill. 582; Trunkey v. Hedstrom, 131 Ill. 204; Comstock v. Price, 103 Ill. App. 19. If appellee was entitled to recover, still the measure of damages depended upon the result of the course it pursued under the rule above stated; or if it pursued none of these courses, it was bound to show how much less, if any, than the contract price it would have received if it had sold the coal to the best advantage at the time and place of delivery when appellant refused to receive it. Upon that subject appellee offered no proof, and therefore the record before us furnishes no basis for the verdict.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*