# White Walnut Coal Company, Appellee, v. Crescent Coal & Mining Company, Appellant.

## Gen. No. 15,480.

1. ACCORD AND SATISFACTION—*when not established.* Even if a check be tendered in full its acceptance will not constitute an accord and satisfaction in the absence of an existing dispute as to the amount due.

2. ACCORD AND SATISFACTION—*effect of waiver.* Even though an accord and satisfaction has taken place the same may be waived by subsequent conduct.

3. SALES—*remedies of vendor upon refusal of vendee to accept.* Where the vendee of goods sold at a specified price refuses to take and pay for them, the vendor has three courses open to him. He may store the goods, notify the vendee that he has done so and then recover the full contract price; second, he may keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of the delivery, provided the market price is lower than the contract price; or third, he may, upon notice to the vendee, proceed to sell the goods to the best advantage, and recover the loss provided they fail to bring the contract price.

4. SALES—*what not essential to recovery by vendor upon refusal of vendee to accept.* In order to recover in such an action it is not necessary that the vendor actually have on hand the merchandise ready for delivery.

5. INSTRUCTIONS—*upon what complaint cannot be predicated.* An instruction will not reverse though erroneous if more favorable to the complaining party than the law required.

Assumpsit. Appeal from the Circuit Court of Court county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed May 31, 1911.

ULLMANN & HOAG, for appellant.

TENNEY, COFFEEN, HARDING & SHERMAN, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

On March 4, 1905, the Crescent Coal & Mining Company, the appellant, entered into a contract with the White Walnut Coal Company, the appellee, by which the appellee

agreed to load at its Pinckneyville mines a minimum of 5,000 and a maximum of 7,000 tons per month, for the year ending April 1, 1906, of standard screenings, containing nut, pea and slack as per sample shipped for test, and to deliver the same to the appellant f. o. b. cars Illinois Central tracks, Chicago, for $1.32½ per ton of 2,000 pounds, with the understanding that if there were any reduction in the freight rate there should be a corresponding reduction in the price. Appellant agreed to accept the coal as stated, and to pay for the same on the 20th of each month following shipments. Mine weights were to govern settlement, and it was agreed that the appellee should not be required to furnish the coal in case of break-downs, strikes or other causes beyond its control. Prior to the making of the contract 25 carloads had been shipped to Chicago, only three of which, however, had been inspected. There is a disagreement between the parties as to what was meant by the language in the contract, "as per sample," the plaintiff below claiming that the full 25 cars shipped should be regarded as the sample, while the defendant claimed that the coal should all have measured up to the standard of the three cars inspected.

During May and June 9,000 tons of screenings were delivered and paid for. During the month of July 24 cars were rejected, on the claim by the appellant that the quality was not equal to the sample. The appellee claims that this rejection was not made in good faith, but that it was due to the fact that the Chicago market was glutted and the price of all kinds of coal had gone down. Appellee continued to ship to Chicago, but constant complaint was made by the appellant as to the quality of the screenings, and many cars were rejected. On October 27, 1905, the appellant wrote appellee as follows:

"Since you are evidently not disposed to give us merchantable screenings, such as the sample cars upon which we made our contract, we have decided to and hereby notify you that we have rescinded your contract for failure to com-

ply with same, and that we shall hold you for all damages sustained by us by reason of such default upon your part, and you may govern yourselves accordingly."

On November 3, 1905, the appellee wrote in reply as follows:

"Yours of October 27th received. We must decline to accept your order rescinding our contract and we most emphatically dispute your right to do so, for the reason that there is no occasion for the same by any act of ours. We have had the coal shipped to you carefuly inspected, and we know that it is standard and the same as sample submitted. However, as you refuse to accept my screenings under this contract, it of course would be idle for us to go through the form of shipping the cars to you simply to have them rejected. We shall, accordingly, dispose of the coal at the best price we can get in the market, and whatever damage we may suffer by your refusal to accept it, we shall expect you to pay to us."

Thereafter the appellee continued to produce screenings at its mines and to sell the same in Chicago, St. Louis and Minneapolis. About $20,000 was credited to appellant's account as the proceeds on these sales, although the coal was sold at a very low price. In some instances not enough to pay the freight charges was received, and in others a sufficient price to pay 40 cents per ton at the mines. The appellee rendered to the appellant a statement each month of the amount of the shipments and the receipts, and advising it of the balance claimed to be due. The gross amount of this balance at the termination of the contract was $10,-638.90. For this sum a verdict was rendered by a jury and judgment entered thereon. From the judgment this appeal is taken.

The first contention of the appellant is that the record shows that the screenings shipped after August 8, 1905, did not substantially correspond to the sample shipped for a test, at the same time insisting that the only sample which should be considered was the coal in the three cars inspected

by two employees of the appellant. Whether or not the screenings shipped equalled the sample, and what the sample consisted of, are pure questions of fact which have been passed upon by a jury, and have received the attention of the trial judge on a motion made for a new trial. We think the conclusion reached was not erroneous.

The second point made is based upon the acceptance of the check made by the appellant to the appellee on August 18, 1905, for $871.87, it being claimed by the appellant that this acceptance should be treated as an accord and satisfaction, and that therefore there should be no recovery allowed for shipments during the month of July, 1905. The point is raised particularly in connection with the refusal of the court to give an instruction requested by the appellant, and which read as follows:

"The jury are instructed that if they find from the evidence that there was a dispute between the plaintiff and the defendant as to the amount due for July, 1905, shipments, and if you further find from the evidence that the defendant sent to the plaintiff a check or money, purporting to be in full payment for July, 1905, shipments, and said check or money was received or retained by the plaintiff, then the plaintiff is estopped from recovering from the defendant any balance that it may claim is due and owing to it from said defendant for shipments during the month of July, 1905."

The record shows that accompanying the check was a voucher in which appellant places the amount of shipments for July, 1905, at 6,340,900 pounds, the amount due therefor being carried out at the contract price and aggregating $4,042.32. From this was deducted "freight estimated," $3,170.45, and underneath was a form of release which read, "in full of above account." Appellee retained the check but returned the voucher unsigned, and there was considerable correspondence between the parties in regard to the matter, the appellee insisting that the voucher did not include all shipments for July. The record shows that the appellee was

correct in its contention, because the appellant afterwards paid for two cars shipped on July 25th and claimed from the appellee credit for freight bills paid by it on shipments made in July. While the voucher recites that it was for July shipments, it does not state that it covered all of such shipments, and the frank admission is made that the freight is estimated. This voucher was not signed by appellee, but in our opinion even if it had been signed it would not have constituted an accord and satisfaction under the circumstances. The record does not disclose that there had been any dispute as to the July shipments. Indeed, subsequent occurrences show that in all probability some of the July shipments had not reached appellant at the time it made out the voucher. It also was uncertain as to the amount to which it would be entitled for freight, and later on demanded and received credit for four freight items, all on July shipments. We think therefore that the court did not err in refusing to give the instruction as requested. American F. & M. Co. v. Lindsay Chair Co., 129 Ill. App. 548; Canton Coal Co. v. Parlin, 215 Ill. 244. In the case last cited the court said:

"The defendant had the right to have its check received as offered, if received at all, unless there was a subsequent waiver of that condition. We do not regard the evidence as tending to show that there was such a waiver."

In the case before us the evidence appears conclusive as against the appellant that if it intended to insist as a condition upon which the appellee should receive the check that it was to be regarded as an accord and satisfaction, it by its conduct subsequently waived that condition. The instruction, however, should not have been given in the form presented, for another reason, namely, that it read: "and said check or money was received or retained by the plaintiff." Manifestly the language should have been: "and said check · or money was received and retained by the plaintiff."

The next contention of the appellant is that the correct measure of damages in this case is the difference between the

contract price and the market price at the place of delivery specified in the contract, viz., Chicago. The appellee, however, on the other hand, tried the case upon the theory that it was entitled to recover the difference between what it obtained for the coal on a resale and the contract price, it appearing that the amount that it did so receive was less than the contract price. In the case of Bagley v. Findlay, 82 Ill. 524, it was held that where the vendee of goods sold at a specified price refuses to take and pay for them, the vendor has three courses open to him. He may store the goods, notify the vendee that he has done so and then recover the full contract price; second, he may keep the goods and recover the excess of the contract price over and above the market price of the goods at the time and place of the delivery, provided the market price is lower than the contract price; or third, he may, upon notice to the vendee, proceed to sell the goods to the best advantage, and recover the loss provided they fail to bring the contract price. See Olson v. Wabash Coal Co., 126 Ill. App. 253, and cases cited. In the case before us this last method was pursued by the vendor and, in our opinion, the record shows good faith in its conduct in that regard. A vendee in default is not the one to determine what course shall be pursued by the vendor.

It is next urged upon us that the plaintiff did not prove that it was ready, willing and able to furnish the defendant with 5,000 tons of screenings per month, in accordance with the contract; that because plaintiff declined to accept defendant's rescission and kept the contract open, it cannot recover unless it has shown its ability to furnish to the appellant the minimum amount of 5,000 tons per month. We do not so understand the law. In the case of Franklin v. Krum, 70 Ill. App. 649, the following language is used in a case very similar to the one before us:

"Apparently from the course of the trial, it seems that appellant's contention was that from the making of this contract to the refusal of the appellant to carry out the same, it was obligatory upon appellees to have had all the lumber on hand ready for delivery. Such is not the law. It was

sufficient for the purposes of the contract if appellees had and were ready to deliver the lumber whenever appellant wished for it."

Whether or not the appellee was ready, able and willing to perform the agreement after receipt of the letter of appellant claiming rescission, was a question of fact to be determined by the jury from all the circumstances in the case. Roebling's Sons' Co. v. Lock ·Stitch Fence Co., 130 Ill. 660. It also appears that the average price obtained by the appellee on the resale of the screenings was so much less than the contract price that if it had resold all that it was entitled to do under the contract, the amount of the recovery now would have been much greater. Appellant should not be heard to complain of something that works to its advantage.

It is further argued by appellant that errors were made in the admission of testimony. In several instances no exceptions appear to have been taken to the alleged objectionable testimony; but treating the matter as though all the points raised had been preserved by exceptions, we are of the opinion that the court made no errors in the admission of rejection of testimony, such as should call for a reversal of the judgment.

The court gave at the request of the plaintiff the following instruction:

"If you find from the evidence that the plaintiff sold the coal which it shipped under the contract and which was not accepted by the defendant, to the best advantage possible under the circumstances, then the measure of plaintiff's damages is the difference between the contract price of the coal so shipped by plaintiff and the net amount realized by plaintiff from the sale of same."

Appellant insists that this instruction was erroneous, but for the reasons heretofore stated we think that it correctly advised the jury as to the law governing the measure of damages in the case.

The appellant further objects because of the modification

of an instruction given at its request. The instruction as tendered read as follows:

"The jury are instructed, that the rule of law is, that when a purchaser of personal property which, by the terms of the purchase, is to be delivered at a specified time and place, and at a stipulated price, refuses to receive and pay for the property, and no part of the purchase price has been paid, and if the price has, in the meantime, declined, then, in an action by the vendor against the vendee for refusing to comply with the contract, the proper rule of damages is the difference between the contract price and the current price at the time and place for delivery, as fixed by the contract of sale and purchase."

And the modification consisted in the following:

"provided the jury believe from the evidence there was at the time of delivery a market price in such place of delivery. The jury are instructed that in such case as is above herein stated the vendor upon notice to the vendee would have a right to sell the property in the place of delivery as fixed by the contract, or elsewhere, in good faith for the highest and best price obtainable—and the price obtained upon such sale so made in good faith would be evidence for the consideration of the jury as to what was such market price."

We think that this instruction should not have been given, either as originally tendered or as modified by the court. In our opinion, however, the appellant was not injured by this action of the court. A large amount of testimony had been offered by appellant on the question of market value, and this could have been important only as bearing upon the question of whether or not good faith was used by the appellee in making a resale. The modified instruction was more favorable to the appellant than it had a right to ask.

Objection is made to the refusal of the court to give other instructions asked by appellant, many of them being on the measure of damages, based upon the theory of the appellant. We think no error was committed in this regard, nor in re-

fusing to give certain other instructions which, in our judgment, were fully covered by instructions that were given.

We are next asked to reverse the judgment because the verdict of the jury is excessive. Careful reading of the record convinces us that the appellee used good faith in its endeavor to dispose of the screenings called for in the contract, and obtained the best price it was able to get for the same. In our opinion the amount of the verdict is not excessive, and was fully warranted by the evidence in the case.

*Affirmed.*