## Sparta Produce Exchange, Appellee, v. Wilson & Company, Appellant.

### Gen. No. 26,842.

1.  SALES—*when jury to determine terms.* Where the terms of the sales of the cars of strawberries in question were the subject of sharp dispute, it was pre-eminently for the jury to determine, as a question of fact, the terms of such sales.

2.  SALES—*where delivery to buyer takes place.* If a contract provides that goods are to be delivered "f. o. b. point of shipment," presumably they pass to the buyer from that point, and delivery to the buyer is held to take place wherever or whenever designated in connection with the letters f. o. b.

3.  SALES—*when title and possession pass to buyer.* Paragraphs 1 and 2, sec. 18 and Rule 1, sec. 19 of the Uniform Sales Act (Cahill's Ill. St. ch. 121a, .¶¶ 21, 22), relating to the time when the property in goods passes to the buyer under an unconditional contract to sell specific goods, applied to the facts in an action to recover the purchase price of certain cars of strawberries, and *held* that the title and possession passed to defendant when the sales were made, and, the contents of the cars being then in good condition, that, if there was any subsequent deterioration caused by any negligent delay of the railroads in carrying such contents to the cold storage warehouse pursuant to defendant's instructions, defendant must look to the carrier for compensation, and plaintiff's right to recover the price at which the berries were sold was not affected thereby

4.  FRAUDS, STATUTE OF—*when sales of goods come within exception to statute.* Where a buyer accepted the goods in question at the time the respective sales were made, the transactions came within the exception to the statute of frauds, section 4, Uniform Sales Act (Cahill's Ill. St. ch. 121a, ¶ 7), in view of section 48 (Cahill's Ill. St. ch. 121a, ¶ 51), providing that the buyer is deemed to have accepted the goods when he intimates to the seller that )he has accepted them, or when the goods have been delivered to him and he does any act in relation to them inconsistent with the ownership of the seller, or when, after the expiration of a reasonable time, he retains the goods without intimating to the seller that he has rejected them.

5.  APPEAL AND ERROR—*when verdict of jury conclusive as to right of recoupment.* The defendant in an action to recover the price of certain cars of strawberries which had deteriorated after acceptance cannot claim anything in the Appellate Court by way of recoupment where all the testimony offered upon the point

was admitted, and no instructions which might have been tendered were refused, and the verdict for plaintiff was consistent with the jury's view of the evidence.

6. INSTRUCTIONS—*what requisite to plaintiff's instructions.* A plaintiff is obliged only to present the law correctly in his instructions upon his theory of the case, and it is not necessary in an instruction to negative matters of defense.

Appeal from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in this court at the March term, 1921. Affirmed. Opinion filed December 19, 1921. Rehearing denied January 3, 1922. *Certiorari* denied by Supreme Court (making opinion final).

WILLIAM R. BROWN, CLIFFORD G. ROE and P. A. RATTRAY, for appellant.

PAUL A. NEUFFER, for appellee; O. A. ARNSTON, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff brought suit to recover the purchase price of a quantity of strawberries sold to defendant, and upon trial had verdict and judgment for $5,262.11. Defendant has appealed.

Plaintiff's version of the transaction, disputed in certain particulars, is that June 20, 1919, a Mr. Toohey, agent of defendant, had a conversation with a Mr. Quay, of Wagner & Sons, commission merchants representing plaintiff, looking to the purchase of strawberries for preserving purposes. Plaintiff then had two cars on the team track of the Chicago, Milwaukee & St. Paul Railway Company. After inspection of a wagonload from one of the cars, a price was agreed upon, and at the request of defendant the contents of one car were sent by wagons to the United States Cold Storage Company and Wagner & Sons telephoned the railroad company to send the other car to the same destination. The first car was paid for

and is not involved in this suit; the other car did not arrive at the cold storage plant until June 24, although it had been loaded and shipped from Sparta, Wisconsin, on June 17. June 21, upon inquiry of Wagner & Sons as to whether they had any more strawberries for sale, Mr. Toohey was informed that they had two cars rolling in transit somewhere between Sparta, Wisconsin and Chicago, one of which had been sold; a price was agreed upon for the other car and again, at defendant's request, this car was ordered diverted to the cold storage plant but it did not arrive at its destination until June 23, although it had been loaded and shipped from Sparta, Wisconsin, on June 19. June 23, a sale of a third car of strawberries then rolling in transit between Sparta, Wisconsin and Chicago was made in the same manner and diverted pursuant to instructions given by defendant. This third car did not arrive at its destination until June 26, although it had been loaded and shipped from Sparta on June 20. There was evidence that all cars when loaded were inspected by plaintiff's agents and were found to be in the best condition for shipment, properly loaded, the cars iced to capacity, and that, under such conditions, the berries would remain in good condition for 3 or 4 days. Witnesses for defendant testified that upon arrival of the strawberries at the cold storage plant they were inspected and found to be overripe, soft and very badly decayed, due to disease and fungus, also rain, and that the berries could not be used for preserving.

The crucial controverted point is as to the terms of the sales. Quay testified that the goods were sold "f. o. b. time of sale" and supported this by written memoranda containing this notation, made at the time of each sale. He also testified that these words have a recognized universal meaning in the trade, namely, that under such terms possession in the buyer takes

place at the time of sale no matter where the car may be, and the seller then loses all control. Mr. Toohey, for defendant, testified that the words, "f. o. b. shipping point" mean in trade that the buyer owns the berries when that car starts. "We have to pay the freight and take the chances of the berries being good." This tended to confirm Quay's statement that the custom was "if the purchaser bought strawberries f. o. b. time of sale, rolling, and the strawberries were bad, he takes a chance." Defendant contends that Quay's testimony alone cannot be held to prove a custom or usage, citing *Bissell v. Ryan*, 23 Ill. 517, but Toohey's testimony tended to corroborate Quay's evidence upon this point. Toohey denies plaintiff's version of the sales and testifies that he bought the goods to be delivered to the cold storage warehouse. Plaintiff paid the entire freight to Chicago.

It was pre-eminently for the jury to determine as a question of fact the terms of the sales. *Seckel v. Scott*, 66 Ill. 106; 1 Mechem on Sales, 416. Not unmindful of the variant stories of respective witnesses, we cannot say that the jury manifestly should not have accepted plaintiff's version.

The determining question then is, what is the law applicable to the sales made under the circumstances presented by the witness, Quay?

"The meaning of these words (f. o. b.) is, that the seller is to put the goods on board at his own expense, on account of the person for whom they are shipped; delivery is made, and the goods are at the risk of the buyer from the time when they are so put on board." Benjamin on Sales, 1920 edition, page 785.

If the contract provides that goods are to be delivered "f. o. b. point of shipment," presumably they pass to the buyer from that point. Delivery to the buyer is held to take place wherever or whenever designated in connection with the letters f. o. b. *Olson v. Wabash Coal Co.*, 126 Ill. App. 253; *Pittsburgh & I. Coal Co. v. Hostler Coal & Coke Co.*, 147 Ill. App.

387; *Knapp Electrical Works v. New York Insulated Wire Co.*, 157 Ill. 456; Cyc. 35. The term, "f. o. b. time of sale," means the goods are at buyer's risk from the time of sale. Parties entering into a contract in the ordinary course of business are presumed to have done so with reference to any existing general usage or custom relating to such a business. *Steidtmann v. Joseph Lay Co.*, 234 Ill. 84.

What provisions of the Uniform Sales Act (chapter 121a, Hurd's Rev. St.) are applicable? The defendant asserts paragraphs 1 and 2 of section 47 (Cahill's Ill. St. ch. 121a, ¶ 47), which provide that the buyer shall have the opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract. Plaintiff claims that the goods being of marketable quality at the time the sales were consummated and the goods having then, in law, passed to the purchaser, they are thereafter at its risk and the sale is not conditioned upon a subsequent inspection. Section 18 of the Sales Act (Cahill's Ill. St. ch. 121a, ¶ 21), provides that:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Section 19 (Cahill's Ill. St. ch. 121a, ¶ 22) provides that

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time

of payment, or the time of delivery, or both, be postponed.''

Applying these latter provisions to the facts as found by the jury, we must conclude that the title and possession of the three cars in question passed to defendant when the sales were made on June 20, 21 and 23, respectively, at which times the contents were in good condition. If there was any subsequent deterioration caused by any negligent delay of the railroads in carrying them to the cold storage warehouse pursuant to the instructions of defendant, it must look to the carrier for compensation. This, however, does not affect the right of plaintiff to recover the price at which the berries were sold.

Defendant invokes the statute of frauds (section 4, Uniform Sales Act, Cahill's Ill. St. ch. 121a, ¶ 7), providing that a contract to sell goods of the value of $500 or upwards is not enforceable unless there is earnest money or part payment or note or memorandum in writing, signed by the party to be charged, or unless ''the buyer should accept part of the goods.'' Section 48 of the Sales Act (Cahill's Ill. St. ch. 121a, ¶ 51) provides that:

''The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them.''

The buyer having accepted the goods at the times the sales were made, the transaction comes within the exception to the statute of frauds.

Defendant argues that it is entitled to something in the way of recoupment which was not allowed by the jury. Upon the facts we do not see how there can be any claim for recoupment; all the testimony defendant offered upon this point was admitted and

no instructions which may have been tendered. were refused. The verdict of the jury was consistent with its view of the evidence.

Many criticisms are made against the rulings of the court with reference to the giving and refusal of instructions. These criticisms seem to us to be predicated upon the transaction as defendant sought to establish it by evidence while, on the other hand, they are in harmony with the theory of plaintiff. Plaintiff was only obliged to present the law correctly in its instructions upon its theory of the case and it is not necessary in an instruction to negative matters of defense. *Mt. Olive & S. Coal Co. v. Rademacher*, 190 Ill. 538.

This court should set aside a verdict only when it is manifestly against the weight of the evidence. We cannot so conclude in the present case. The instructions correctly stated the law applicable to the facts found by the jury. No reversible errors occurred upon the trial, and the judgment is therefore affirmed.

*Affirmed.*

DEVER, P. J., and MATCHETT, J., concur.