THE JULIUS WINKELMEYER BREWING ASSOCIATION
v. J. B. NIPP.
**No. 220.**

1. CONTRACT OF SALE—*not completed until terms accepted and property separated.* A contract by which A. agrees to sell certain packages of beer, etc., to B., upon the terms and conditions therein stipulated, when ordered by B., is not a completed contract of sale until B. accepts the offer by making an order. The sale under such contract is not completed until the packages are separated and delivered to B.

2. SALE OF MERCHANDISE—*when vendor pays the freight, is completed when delivery to vendee is made.* Ordinarily a delivery of merchandise to the carrier is a delivery to the purchaser; but when the seller pays the freight, the carrier is his agent and the delivery is made at the place of its destination.

3. —— *when vendee pays freight and charges it back, vendor pays it.* Where the freight charges are to be paid in the first instance by the purchaser, but were to be charged to the seller and deducted from the price of the merchandise, *held*, that the seller pays the freight. *E. g.*: Where A. sells intoxicating liquors to B. and pays the freight upon them to Wichita, Kan., the sale is made at Wichita.

4. INTOXICATING LIQUOR—*sale of, is aided by one furnishing barrels and kegs to keep it in until sold.* A brewing company which furnishes a person with barrels and kegs to be retained by such person until the contents are sold or disposed of, and then to be returned to the brewing company, aids such person in the sale or disposal of such contents, and also knows that such person is not to sell such contents in the packages which belong to said brewing company.

5. DEMURRER—*petition examined and held sufficient.* Where a petition sets out a sale of intoxicating liquors in original and un-

BREWING ASSOCIATION v. NIPP.            731

Nov. 16, 1897.        Opinion.   Dennison, P. J.          C. Div.

broken packages in car-load lots, under a contract set out in the petition, in an action to recover the balance due thereon, and where there is no allegation in such petition that the intoxicating liquors were to be or were used by the purchaser for the purpose of making illegal sales thereof, and there is nothing in the contract of sale to charge the seller with notice that the purchaser intended to use the liquors for an illegal purpose, and where the petition is otherwise sufficient, *held*, that the court erred in sustaining a demurrer to such petition.

Error from Cowley District Court. Hon. M. G. Troup, Judge. Opinion filed November 16, 1897. *Reversed.*

*Torrance & Torrance*, for plaintiff in error.

*Madden & Buckman*, for defendant in error.

DENNISON, P. J.   This action was commenced in the District Court of Cowley County, Kansas, by the Julius Winkelmeyer Brewing Association, as plaintiff, against J. B. Nipp, as defendant.   It is alleged in the petition that, on May 9, 1888, the plaintiff entered into a contract to sell to one J. H. Saunders keg and bottled beer and Young's Extract of Malt, in original packages and in car-load lots, at prices therein stipulated; that said J. H. Saunders agreed to pay for the same within sixty days after shipping; that J. B. Nipp guaranteed in writing that said Saunders would strictly and promptly perform all the conditions and obligations of the contract.   The plaintiff, in compliance with such contract and guaranty, sold and shipped to said Saunders, at Wichita, Kan., six car loads of beer and Extract of Malt, in original packages, between said ninth day of May and the first day of October, 1888, aggregating in value the sum of $5547.72, and received on account of said sale and shipment, in bottles, boxes and kegs returned and in

732     BREWING ASSOCIATION v. NIPP.

S. Dept.      Opinion.   Dennison, P. J.     6 Kan. App.

cash, the aggregate sum of $3957.79. It is also alleged that said J. B. Nipp was a silent partner of said Saunders in the business. A copy of the contract and a statement of the account are attached to the petition as exhibits and made part thereof. The amount claimed as remaining due and unpaid is $1589.93 with interest at seven per cent. from July 20, 1888.

The plaintiff filed an amended petition, in which it is alleged that the contract was made in St. Louis, Mo., at the place of business of the plaintiff, and that the liquors and malts were sold and delivered to Saunders on Nipp's guaranty, in the State of Missouri, and that it was lawful to sell such liquors in such manner in Missouri.

It is also alleged that the plaintiff is a citizen of Missouri and that Saunders and Nipp were citizens of Kansas, and that said liquors and malts were sold to said Saunders in original and unbroken packages. It is also alleged that plaintiff did not aid said Saunders and Nipp in any manner in the sale of said liquors and malts, and had no interest whatever in the sale of said liquors and malts in the State of Kansas. It is also alleged that said malts were not intoxicating. The defendant demurred to the petition and the amendment thereto, upon the ground that they do not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant.

The court sustained the demurrer, and the plaintiff brings the case here for a review of the order of the trial court therein.

The contract reads as follows:

"This agreement, made and entered into this ninth day of May, 1888, between the Julius Winkelmeyer Brewing Association of St. Louis, State of Missouri, vendor, and J. H. Saunders, doing business under the

firm name and style of J. H. Saunders, of the city of Wichita, State of Kansas, herein called vendee —

"WITNESSETH : That said parties have agreed and hereby do agree as follows :

"1. Said Brewing Association is to sell to said vendee its products, in car-load lots, keg and bottled beer, mixed or separate, at the following prices : Keg beer at $8.40 per barrel ; bottled beer at $9.50 per cask of six dozen quarts, $10 per cask of ten dozen pints, $3.90 per case of two dozen quarts ; Young's Extract of Malt at $10.47 per cask of six dozen quarts or ten dozen pints ; allowing for empty bottles returned, forty cents per dozen for quarts and twenty cents per dozen for pints, and for the empty bottled beer cases, seventy cents each ; all free on board at Wichita, Kan. ; and said vendee shall be credited only with such a number of empties as said Brewing Association may receive at St. Louis in sound condition.

"2. All freight charges on beer and malt extract are to be paid to the carrier by said vendee, and then, if they do not exceed the present rate of freight, to be by said vendee charged to said Brewing Association. Should the present rates of freight be advanced, then such advance shall fall on said vendee.

"3. All cooperage which may be sent by said Brewing Association to said vendee is to be returned by said vendee to St. Louis, to said Brewing Association, as soon as the same is empty, and in no event later than ——— months after its shipment to said vendee ; and if not so returned within said time, then and in that event said Brewing Association may, at its option, declare the value thereof a debt against said vendee at the following prices : $1.25 for each quarter, half or eighth barrel. The freight on all such empty cooperage as may be returned is to be paid by said Brewing Association.

"4. All goods shall be paid for within sixty days after shipment, and should more than three cars be shipped within said time, then and in that event said vendee shall pay for the first car load when ordering said fourth car load, and so on throughout the

734     BREWING ASSOCIATION v. NIPP.

S. Dept.          Opinion.   Dennison, P. J.        6 Kan. App.

duration of this contract.    This paragraph is to be so construed as not to allow said vendee to be in arrears in payments beyond the price of three car loads of goods at any one time.

"5.   This contract to be in force for one year from date, during which time said vendee agrees to sell no other beer than that manufactured by said Brewing Association, and said Brewing Association agrees during said period to sell no beer at all in the following territory :    [None stipulated.]

"6.   All wagons and other property not expressly sold and which may be furnished by said Brewing Association to said vendee, shall remain its property, and same are to be returned to it at the expiration of this agreement in the same condition in which said property was received, usual wear and tear excepted.

"7.   Any failure on the part of said vendee to strictly adhere to and comply with the terms and conditions of this agreement, shall, at the option of said Brewing Association, work a forfeiture of the unexpired portion of this contract.

"Witness our hands in duplicate, this ninth day of May, 1888.

(Signed)   JULIUS WINKELMEYER BREWING ASS'N.
                          per John Gecks, *Traveling Agent.*
          J. H. SAUNDERS.

"We and each of us hereby guarantee that said vendee will strictly and promptly perform all of the conditions and obligations of the above contract.

May 9, 1888.              (Signed)     J. B. NIPP."

Indorsed on the back is the following :

"Bond and contract of J. H. Saunders with Julius Winkelmeyer Brewing Ass'n.    J. B. NIPP, *Bondsman.*"

It will be seen that the contract is not a sale, but is an agreement or offer to sell in car-load lots.    The amount to be sold is to be determined by Saunders. The fourth paragraph of the contract provides that when he orders the fourth car load he must pay for

BREWING ASSOCIATION v. NIPP.          735

Nov. 16, 1897.        Opinion.   Dennison, P. J.          C. Div.

the first car load.   This clearly indicates

**1. Contract completed when terms accepted.** that the order of Saunders is to be made before liquors are to be shipped to him. When Saunders ordered a car load of liquors, the order was based upon the agreement or offer of the Brewing Association to sell to him, and the sale was to be made to him according to the terms of the contract. It clearly requires an order from Saunders to complete the contract of sale.   The contract is an offer to sell upon the terms therein stated.   The order is the acceptance of the offer.   The contract of sale is therefore complete when Saunders mails a letter or sends a telegram ordering a car load of liquors.   The contract of sale is complete but the sale is not.   Something more must be done.   The liquors must be separated and delivered to Saunders before the sale is completed.   It is clear that the separation took place in St. Louis.   The delivery is ordinarily made to the purchaser by a delivery to the carrier.   Where the purchaser is to pay the freight, the car-

**2. When vendor pays freight, contract complete on delivery.** rier is his agent.   " The illegality of the sale of intoxicating liquors frequently depends upon the place where the sale is made ; this is governed by the place where the sale is completed by delivery.   Where the vendor is to and does pay the freight to the place of delivery, the place of delivery becomes the place of sale." 11 Am. & Eng. Encyc. of Law, 742, and cases there cited.

" If by the terms of the contract the seller is required to send or forward the goods to the buyer, the title and risk remain in the seller until the transportation is at an end, after which time the title is vested in the buyer. *Bloyd v. M. & J. Pollock*, 27 W. Va. 75 ; *Fry & Hartman v. Lucas*, 29 Pa. St. 356 ; *Taylor v. Cole*, 111 Mass. 363, etc." 21 Am. & Eng. Encyc. of Law, 477, *note*.

736     BREWING ASSOCIATION V. NIPP.

S. Dept.          Opinion.   Dennison, P. J.      6 Kan. App.

The freight charges were to be paid by Saunders in the first instance, but were to be charged to the Brewing Company and deducted from the contract price of the liquors. Under a contract and transactions quite similar to these, the Supreme Court of Iowa, in *Gipps Brewing Co. v. De France* ( 91 Iowa, 108, 58 N. W. Rep. 1087 ), held that the sale was completed by the delivery of the liquors at their destination.

*3. When vendee pays freight and charges it back, vendor pays it.*

Following these decisions, which we think are founded upon correct principles, we must hold that the sales under the contract in this case were made in Wichita, Kan. It is immaterial where the agreement to sell was made.

It is contended that it is also immaterial where the sale of the liquors was made, as they were sold in original and unbroken packages at a time when this could be legally done, and that the Brewing Company did not in any way aid Saunders and Nipp in the sales of the liquors in Kansas. In support of this contention, the petition alleges that no wagons or other property not expressly sold were furnished to Saunders, nor was it intended or understood that any such property was to be furnished him, and that the sixth paragraph of the contract was a general clause used in contracts in Missouri, and was left in this contract inadvertently and by mutual mistake of all the parties.

The contract clearly shows that the Brewing Company was to aid in the sale of the liquor in Kansas. It furnished the barrels for the purpose of assisting Saunders in completing his sales. It also knew that Saunders was not to sell the liquors in original and unbroken packages. He could not do so, for he never became the owner of the barrels. The owner-

*4. Sale of intoxicating liquor aided by furnishing barrels, kegs, etc.*

BREWING ASSOCIATION v. NIPP.    737

Nov. 16, 1897.    Opinion.  Dennison, P. J.    C. Div.

ship of them remained in the Brewing Company, and, when emptied, they were to be returned to it; and if not so returned, the Brewing Company might, "at its option, declare the value thereof a debt against the vendee at the following prices: $1.25 for each quarter, eighth or half barrel." In the itemized account attached to and made a part of the petition, the Brewing Company credits Saunders with the return of a large number of such barrels, for which it allows him nothing as their value. Under the allowance made for the return of empty bottles and cases as provided for in paragraph one, Saunders is credited with the return of a large number of them, and with over sixteen hundred dollars as their value.

It is contended by the plaintiff in error that the demurrer was wrongfully sustained, for the reason that there is nothing in the petition to show that the liquors were to be, or were, used by Saunders for the purpose of making illegal sales thereof, nor was there anything in the contract to charge the plaintiff in error with notice that Saunders intended to use this liquor for sales in violation of the laws of the State of Kansas.

In discussing this question in their brief, the attorneys for the defendant in error say:

"In considering this question, we shall consider that from the petition and the contract it will be considered without question that Saunders, when he made the contract in question, was expecting to engage in the illegal sale of intoxicating liquors in this State, and that that fact was known to the plaintiff. While there is no direct averment in the petition to that effect, still the contract itself and the averments of the petition are sufficient for that purpose. The petition nowhere avers that Saunders had, or that it was expected that he should have, a druggist's permit for the sale of intoxicating liquors for the excepted pur-

poses, nor is it averred that the liquors were to be sold by Saunders in the original packages ; and therefore we say it sufficiently appears that the use to which the liquors were to be put in this State was illegal, and that the plaintiff knew that fact.''

The contention of the plaintiff in error in this particular must be sustained.   It is lawful in Kansas for certain persons to sell liquors for certain excepted purposes.   We cannot say, as a matter of law, that a contract for the sale of liquors must recite that the purchaser has obtained, or is to obtain, a druggist's permit to sell the same for the excepted purposes, or that the purchaser is to resell the same in the original packages.   Neither is it necessary for the petition to allege these things, in order to avoid a presumption that the liquors were purchased for the purpose of making illegal sales.

There is no allegation in the petition as amended that Saunders resold the liquors unlawfully, or that he bought them for that purpose.   In considering the amount of liquors furnished in the four months, and applying the knowledge we have of such matters to the facts as set forth in the petition and contract, we may feel reasonably certain that Saunders purchased these liquors for the purpose of making illegal sales, that he did make illegal sales, that the Brewing Company knew that he purchased them for that purpose and was selling them illegally, and that the Brewing Company intended to, and did, aid him in making such illegal sales.   This will not help the defendant in error in this case.   In determining whether the court erred in sustaining the demurrer to the amended petition, we can only decide the legal question as to whether the amended petition states facts sufficient to constitute a

5. Demurrer improperly sustained.

cause of action in favor of the plaintiff and against the defendant. For the reasons above stated, we hold that it does.

The judgment of the District Court is reversed.