No. 41,125

CUSTOM BUILT HOMES CO., INC., *Appellant*, v. KANSAS STATE COMMISSION OF REVENUE AND TAXATION, *Appellee*.

(334 P. 2d 808)

Opinion filed January 24, 1959.

*Charles W. Hess,* of Kansas City, Missouri, and *Edward H. Sondker,* of Topeka, argued the cause, and *John W. Breyfogle, Jr.,* of Olathe, and *Charles P. Dribben,* of Kansas City, Missouri, were with them on the brief for appellant.

*Michael A. Barbara,* of Topeka, argued the cause, and *Clarence J. Malone* and *Dean Burkhead,* both of Topeka, were with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: The State Commission of Revenue and Taxation of the State of Kansas sustained an assessment for Compensating Tax made by the Director of Revenue based upon the use, storage or consumption of tangible personal property within the State of Kansas pursuant to G. S. 1949, 79-3703, as amended, against Custom Built Homes Co., Inc., appellant. The District Court of Johnson County upon appeal affirmed the order of the Tax Commission and the appellant has duly perfected its appeal to this court.

The question presented is whether under a sales contract the appellant used, stored or consumed prefabricated house sections as *tangible personal property* within the State of Kansas after said sections had ceased to be a part of interstate commerce and prior to their becoming affixed as real estate within the state.

The decision is controlled by a determination of *when title passed* to the property which is the subject of the sales contract.

Custom Built Homes Co., Inc., hereafter called appellant, is a Kansas corporation having its principal place of business in Johnson County, Kansas. During the period in question, from October 1, 1951, to September 30, 1955, the appellant was engaged in the business of home development and the sale of prefabricated houses in the Stony Point Heights Addition in Wyandotte County, Kansas.

Appellant entered into a contract to purchase prefabricated houses from Page & Hill Homes, Inc., a Minnesota corporation, here-

after called Page-Hill. Under the contract Page-Hill was "to furnish and deliver *F. O. B. building site in Wyandotte County, Kansas,* one hundred Ninety" (Emphasis added) prefabricated house units at the prices and under the terms and conditions specified. Among the provisions of the contract are the following:

"3. Terms of payment shall be in accordance with Agreement to Pay form attached to be executed by both the lender furnishing construction money and your company [Custom Built Homes Co., Inc.].

"4. Delivery schedule shall be furnished by you showing house model, elevation, asbestos siding and roof shingle colors thirty days in advance of requested delivery dates. Each schedule shall provide for not less than 15 house units with the exception of your initial order covering house units to be used for demonstration and sales promotion.

"5. The prices as listed above are based on the quantity covered by this order and your acceptance of deliveries to start on or about December 1, 1953 and be completed and accepted by you on or before December 31, 1954. It is recognized that house units covered by this order are to be geared to your sales and in order for us to properly control our production schedule it is agreed that you will keep us advised each week as to the number and model of houses sold."

(The record does not disclose whether the "Agreement to Pay form" was introduced in evidence and the parties have not seen fit to present anything in the record concerning the time or manner of payment.)

Under the terms of the contract, Page-Hill delivered from its factory in Minnesota the prefabricated sections to the building site. Delivery was made by Page-Hill trucks operated by Page-Hill drivers. The complete and prefabricated wall and partition sections included the exterior trim, siding, building paper, sheeting, studs, foil insulation, sheet rock, interior trim, windows and frames, doors, door frames and hardware already attached. The interior partitions were also complete and prefabricated in the same complete manner. The ceiling sections were complete and prefabricated with the trim already in place. The roof sections were prefabricated containing joists and insulation.

In its development of Stony Point Heights Addition appellant purchased the lots and erected such foundations as were necessary and constructed thereon a platform constituting the floor joists and the subflooring from raw materials upon which the Kansas sales tax was paid. The complete house, disassembled, came with the truck, excluding deck material, oak floors, nails,

furnace and wiring. These were all purchased locally and installed by the appellant through its subcontractors or laborers.

As a part of the financing of the construction in Stony Point Heights Addition Page-Hill took a blanket mortgage on the lots to which the prefabricated houses were attached.

Appellant employed five carpenters and two laborers. When the Page-Hill truck arrived at the Stony Point Heights Addition in Wyandotte County, the driver was directed by an employee of the appellant to a specific house foundation—the building site. The truck proceeded to the building site and usually parked on the street immediately in front of the foundation. The truck was then unloaded in the following manner: The Page-Hill driver unhooked his tractor from the semi-trailer and installed a boom on his tractor. He would "unbutton" the canvas covering the semi-trailer, sometimes with assistance from appellant's employees, and then back up his tractor to the semi-trailer and hook on to a section of panel which would be approximately twenty-four feet long. These panels were loaded on the semi-trailer in proper sequence for assembly on the foundation at the time of unloading. Appellant's employees, the laborers, would steady the panels hanging from the boom on the tractor, one on each side, as the driver would carry the section by means of the crane to the foundation. The panel, held by the crane, would be placed on the foundation guided by the laborers. Appellant's carpenters would then nail down the panel, applying from one to three nails. *One of the carpenters would climb up the panel and release the hook of the crane.* Appellant's carpenters would steady the panel until the next section was installed and hooked on to the one previously unloaded. This process was used for all sections, interior and exterior, except the roof and ceiling sections. The roof and ceiling sections were unloaded by appellant's employees, placed in the appellant's truck and installed manually by appellant's employees. All the labor and carpenter work was done by appellant's employees while the house was under construction, except such work as was done by appellant's subcontractors. The Page-Hill driver drove the tractor and remained in the cab where he operated the power take-off which controlled the crane. Loose items loaded on the semi-trailer between the panels and in boxes assembled under the platform of the trailer were unloaded by appellant's employees and placed either in the house

or near the foundation. These included such items as shingles, felt and trim.

In most instances appellant had a contract with the purchaser of a house before the house was constructed.

Except as hereafter indicated, the findings of the trial court are consistent with the foregoing statement of facts. The facts stated were established by *stipulation* with supplementation from the evidence. The few particulars in which there is variance in the record concerning the evidence are deemed immaterial to a decision herein but will be indicated in disposing of appellant's arguments. The parties stipulated the amount of tax plus interest due and owing by the appellant if the order of the Tax Commission is sustained in its entirety.

Pertinent to the issues herein, the trial court after finding that Page-Hill was to furnish and deliver prefabricated house units *F. O. B. building site in Wyandotte County, Kansas*, further found under its heading denominated "Findings of Fact" the following:

"2. That under said agreement and contract, and the evidence, the *title* to the prefabricated exterior and interior sections handled in the unloading process by the Page & Hill crane *passed* from Page & Hill to Custom Built Homes at *the instant the hooks of said crane were disconnected from said sections.* At that time said sections had become *temporarily* affixed to the foundation platform by means of from one to three nails having been applied by employees of Custom Built Homes. . . ." (Emphasis added.)

Under the same heading it also found that title to the prefabricated roof and ceiling sections and to the loose items passed from Page-Hill to appellant *at the time they were unloaded from the semi-trailer* by appellants employees.

The trial court found that Page-Hill "did assume liability on occasion for damage to panels in the unloading of the same by its crane; however, under the contract between the parties it was provided, 'If shipment is by transportation owned or operated by Manufacturer (Page & Hill), Manufacturer assumes the responsibility for loss or damage incurred in shipment.'" (This portion of the written contract does not appear in the record as abstracted.)

The trial court concluded that at the time the title, possession and control of the various prefabricated sections and materials passed from Page-Hill to appellant, said sections and materials constituted *tangible personal property* purchased from a vendor without the State of Kansas, all within the meaning of the statutes of the State of Kansas and the regulations of the Kansas State

Commission of Revenue and Taxation and affirmed the order made by the Tax Commission. ( G. S. 1949, 79-3602[m]; 79-3702[b] and [c]; 79-3703; 79-3703a; 79-3704[d]; 79-3705a; and amendments to the foregoing statutes where applicable.)

When did title pass? The parties recognize this to be the determinative question in this lawsuit.

Appellant seizes upon the finding of the trial court that title to the prefabricated exterior and interior sections passed to the appellant at the time the hooks of the Page-Hill crane were removed from such sections. It is then argued that the trial court erred in finding that such sections were *temporarily* affixed to the real estate since the evidence is undisputed that the sections were nailed to the foundation at the time the hooks were removed and had thus become permanently affixed to and had become a part of the real estate prior to the passing of title to the appellant.

Further argument by the appellant inferentially proceeds on the theory that title to a prefabricated house unit cannot pass in parts at different times, but of necessity under the contract must pass *in toto* at a specific time in accordance with the intention of the parties. Appellant argues that title to the prefabricated roof and ceiling sections did not pass until such sections had become permanently affixed to and had become a part of the real estate. This is based upon testimony that initially these sections were unloaded by a separate stationary crane furnished by Page-Hill in much the same fashion as the exterior and interior wall panels. This method was discarded after the first few houses were constructed at Stony Point Heights Addition.

Appellant also contends that the trial court erred as to the time title passed to the loose materials since it failed to amplify such finding by stating what percentage these loose items bore to the entire unit, and further in failing to make a finding as to the time title to all of these units of a prefabricated house as a whole was contemplated to pass from Page-Hill to the appellant under the sales contract.

The general rule of law upon which appellant relies is stated in *Kennedy v. Glen Cove Mut. Ins. Co.,* 154 Kan. 327, 118 P. 2d 591, which held:

"In a sale of personal property the fundamental rule of construction to be applied, in determining whether title had passed, is the intent of the parties.

"When uncertainty results from language employed in a written or oral contract of sale, courts, in order to determine the intent of the parties, may

consider legitimate circumstances surrounding the sale, including the acts and conduct of the parties and the construction placed upon the contract by the parties themselves." (Syl. ¶¶ 1 and 2.)

In actions founded upon written instruments, where the rights of parties relative to the terms thereof are in controversy, certain fundamental legal concepts permeate the law, and with minor variations it matters not whether the instrument be á contract, a deed or a will.

The doctrine has been well established and frequently applied that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. (*Arensman v. Kitch,* 160 Kan. 783, 789, 165 P. 2d 441; *Hudson v. Riley,* 104 Kan. 534, 539, 180 Pac. 198; *Hudson State Bank v. Haile,* 130 Kan. 322, 286 Pac. 228; *Grantham v. Hanenkratt Lead & Zinc Co.,* 131 Kan. 535, 542, 292 Pac. 757; *Continental Supply Co. v. Morgan,* 133 Kan. 121, 123, 298 Pac. 790; and *McKay v. Clark,* 162 Kan. 653, 659, 178 P. 2d 679.)

It is a judicial function to *interpret* a written contract which is free from ambiguity and does not require oral testimony to determine its meaning. Ambiguity in a written instrument does not appear until the application of pertinent rules of *interpretation* to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. (*Klema v. Soukup,* 175 Kan. 775, 267 P. 2d 501.) If a written contract is actually ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the contract in that regard but not for the purpose of varying and nullifying its clear and positive provisions. (*Maltby v. Sumner,* 169 Kan. 417, 219 P. 2d 395; and *Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132.)

In *Johnston v. Gibson,* 184 Kan. 109, 334 P. 2d 348, the rules concerning a will have been summarized. See, also, *Brewster v. Schammerhorn,* 183 Kan. 739, 332 P. 2d 526, relevant to the rules of construction where a deed is ambiguous.

Thus, where a court, either trial or appellate, is called upon to determine the intention of the parties to a written sales contract, its first duty is to survey the instrument in its entirety and apply pertinent rules of interpretation. On the issue presently before

the court it was unnecessary to resort to rules of construction calling for extrinsic evidence, unless application of pertinent rules of interpretation to the face of the instrument left it genuinely uncertain as to when the parties intended title to pass to the buyer.

The initial letters, "F. O. B." frequently found in contracts for goods to be shipped stand for the words "free on board." In commercial practice these words have a well-defined meaning, and, as applied to the sale of merchandise destined for shipment, mean that such goods are to be put into the hands of the carrier at the point of shipment free of expense to the buyer. Unless something further appears, therefore, the mere presence of an unadorned F. O. B. provision does not affect the question of when the property interest in the goods passes to the buyer, there being already available without these words the presumption that on delivery of goods to a carrier for transportation to the buyer pursuant to the contract the property interest is intended to pass to the buyer.

It is equally well settled, that if the parties contract in terms providing for shipment F. O. B. destination, the seller assumes the payment of freight and the transportation is for his account, with the ordinary presumption therefrom that the property interest in the goods is not intended to pass until the goods reach the destination indicated. Such cases fall within Section 19, Rule 5, of the Uniform Sales Act, which reads:

"Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." (1 U. L. A., Sales, § 19, p. 10.)

Although the State of Kansas has not seen fit to adopt the Uniform Sales Act, this particular section is merely declaratory of the common law (1 U. L. A., Sales, § 19, Note 241, p. 355) and as such has been adopted in Kansas. (*Brewing Association v. Nipp*, [1897] 6 Kan. App. 730, 50 Pac. 956, 101 A. L. R. 297; and *Hunter v. Kramer*, 71 Kan. 468, 80 Pac. 963.)

In the *Hunter* case four carloads of bran were sold by a seller in Wellington, Kansas, to a buyer in St. Louis, Missouri. The contract called for shipment "F. O. B. St. Louis." The court there said:

". . . Some of the courts have accepted proof as to the meaning of the letters [F. O. B.] when used by parties in a business contract, while others have deemed them to be in such general use in contracts of sale, and so well understood, that their meaning is a matter of common knowledge, of which the courts must take notice. *We are inclined to the view that in contracts of*

*this character judicial knowledge may be taken of these characters, and that parol evidence is ordinarily not needed in their interpretation.* If outside proof, however, was necessary, it appears that the court in one instance overruled an objection to this class of testimony, and allowed the interpretation given by the witness to stand. That interpretation conforms to the one that is generally understood in the business world, and that is 'free on board,' and as used in this contract would signify free on board the cars at East St. Louis." (Emphasis added.) (p. 472.)

The *Hunter* case was cited with approval and quoted as late as 1953 in *State of Oklahoma, ex rel., v. H. D. Lee Co.,* 174 Kan. 114, 254 P. 2d 291. There invoices stated the sales were "F. O. B. Tulsa," and it was held transfer of title occurred at Tulsa where physical delivery and transfer of possession were had. The court quoted 46 Am. Jur., Sales, § 442, with approval stating the general rule as follows:

" 'Where the contract provides for a sale f. o. b. the point of destination, *the title is generally held not to pass, in the absence of a contrary intention* between the parties, until the goods have been delivered at the point designated.' " (p. 119.)

See, also, *Wing v. Mid-Continent Seeds,* 170 Kan. 242, 225 P. 2d 78; and *Hurst v. Manufacturing Co.,* 73 Kan. 422, 85 Pac. 551, for other Kansas cases dealing with F. O. B. sales.

The case of *Wing v. Mid-Continent Seeds,* supra, should not be confused with the rules heretofore stated. There a grower of certified atlas seed sold 400 bags of Atlas Sorgo to the defendant. The confirmation of the sale on the defendant's (buyer's) *captioned form, signed by defendant's manager,* had blanks filled in showing "date of purchase to be '1-19-49' when ship 'Middle of Feb., 1949' " and that defendant had purchased of plaintiff "F. O. B. Farm" the described seed. *The contract of sale was put in issue by the pleadings, defendant claiming the alleged written contract set forth in the petition to be incomplete.* On March 20, 1949, the seed without fault of the plaintiff was destroyed by fire while it was still on plaintiff's farm. The court held that risk of loss followed the title and that upon all the evidence it was a question for the jury to determine when the parties intended title to pass.

In our opinion "F. O. B. building site in Wyandotte County, Kansas," has a clear and unambiguous meaning. Applied to the facts in this case as to each prefabricated house unit under the contract it means free on board the semi-trailer at the building site in Stony Point Heights Addition, Wyandotte County, Kansas. No contrary intention between the parties to the sales contract ap-

pearing from the face of the instrument, title to the merchandise passed upon delivery to the appellant (buyer) free on board the semi-trailer at the building site in Wyandotte County, Kansas.

The time at which merchandise comes to the end of its interstate journey need not coincide with the time at which title to merchandise under a sales contract passes to the buyer. While it was proper to show by evidence that the "use" tax was not imposed upon the operations of the interstate commerce but upon the privilege of use after interstate commerce had ceased, extrinsic evidence to determine when title to the merchandise was contemplated by the parties to pass under the contract was immaterial. Presumably counsel for the appellee was misled upon the theory that the sales contract was ambiguous as to this point.

Assuming it can be successfully argued that appellee is bound by the theory upon which the case was presented in the trial court (*Oliver v. Nugen,* supra), appellant claiming an exemption from the Compensating Tax must bring itself clearly within the exemption provisions of the applicable statute (*Warren v. Fink,* 146 Kan. 716, 72 P. 2d 968), or overcome the statutory presumption that sale of the merchandise by Page-Hill for delivery in Kansas was sold for *use* in Kansas. (*Consumers Co-operative Ass'n v. State Comm. of Rev. & Taxation,* 174 Kan. 461, 256 P. 2d 850; and G. S. 1949, 79-3703a.)

Reference in further discussion will be made only to the General Statutes of 1949, amendments since having been made which are applicable to the various periods of time covered by the order of the Tax Commission being immaterial for our purposes—see G. S. 1957 Supp.

The provisions of G. S. 1949, 79-3703, levy a tax in the amount of 2% of the purchase price for the privilege of using, storing or consuming within the State of Kansas any article of tangible personal property.

For the purpose of administering the act to prevent evasion, evidence that tangible personal property was sold by any person for delivery in the State of Kansas is *prima facie* evidence that such tangible personal property was sold for use in Kansas. (G. S. 1949, 79-3703a; and see, *Consumers Co-operative Ass'n v. State Comm. of Rev. & Taxation,* supra.)

The word "use" means and includes the exercise within this state by any person of any right or power over tangible personal

property incident to its ownership of that property. (G. S. 1949, 79-3702[c].)

Under G. S. 1949, 79-3705a, the consumer or user is required to pay the tax.

Exemptions from the tax are provided in G. S. 1949, 79-3704. The pertinent portions read:

"The provisions of this act shall not apply:

. . . . . . . . . . . . . .

"(c) In respect to the use, storage or consumption of any article of tangible personal property the sale or use of which has already been subjected to a tax equal to or in excess of that imposed by this act whether under the laws of that [this] state or of some other state of the United States;

"(d) In respect to the use, storage or consumption of any article of tangible personal property brought into or used within the state of Kansas if such article of tangible personal property would not have been subject to tax under the provisions of the retailer's sales tax act of this state if purchased within this state;"

The Kansas Retailers' Sales Tax Act, G. S. 1949, 79-3601, *et seq.*, and the Kansas Compensating Tax Act, G. S. 1949, 79-3701, *et seq.*, while separate acts, are complementary and supplemental to one another and are generally construed together. (*Consumers Co-operative Ass'n v. State Comm. of Rev. & Taxation*, supra; and see, G. S. 1949, 79-3702[b].) The provisions of G. S. 1949, 79-3602(m), are therefore material in construing the Kansas Compensating Tax Act. They provide that sales to all contractors of tangible personal property, materials and supplies, for use by them in erecting structures for others, or building on, or otherwise improving, altering or repairing real property of others are sales for final consumption.

Further elaboration upon statutes relating to the Kansas sales tax and the Kansas compensating tax, commonly referred to as the "use" tax, is unnecessary. In *General Motors Corporation v. State Comm. of Rev. & Taxation*, 182 Kan. 237, 320 P. 2d 807, certiorari denied, 358 U. S. 875, 79 S. Ct. 115, 3 L. Ed. 2d 105, statutes have been quoted and the purpose and scope of the two acts have been beautifully summarized. Reliance is placed upon the foregoing case by the appellant under its theory of the law and the facts in the case presently before the court. In our opinion the decision in the *General Motors* case has no application to the facts here. There the property involved was owned by the Federal government, and the court held the corporation's *use* of the property was *not incidental to its ownership* thereof and, therefore, did not subject the corporation to payment of the "use" tax.

There is absolutely *no evidence* in the abstract or counter abstract to indicate that the tangible personal property in question has been subjected to a tax for its sale or use by the State of Kansas, the State of Minnesota, or any other state, except the subject tax of this litigation.

The following appears in appellant's brief:

"Appellant wishes to make clear from the outset that it is not here arguing whether or not a use or sales tax is due and payable from Page and Hill Homes, Inc. Appellant is concerned only with whether or not the State of Kansas has any basis whatsoever for assessing a compensating use tax against appellant under the circumstances involved herein. . . ."

Appellant seeks by a construction of the statutes to avoid liability, citing *Equitable Life Assurance Society v. Hobbs,* 155 Kan. 534, 127 P. 2d 477; and *Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, 114 P. 2d 871. This argument is premised upon two propositions: (1) That a tax designed for tangible personal property cannot be assessed on real estate; and (2) that appellant cannot be assessed a tax for personal property until such time as appellant owns such property while it occupies a status of tangible personal property.

It is noted that no witness associated with Page-Hill testified in the trial court. Appellant's president testified that a deciding factor in making the purchase of Page-Hill homes was the fact that Page-Hill, as a part of its contract, would place the sections of the prefabricated house shipped on appellant's foundation. He further testified that Page-Hill not only had a blanket mortgage on all of Stony Point Heights Addition, which was covered by its contract, but had as additional security a mortgage on some 200 lots in Stony Point South, another adjoining subdivision owned by the appellant.

Appellant argues that if title were permitted by Page-Hill to pass prior to the time the prefabricated parts of the house were affixed to the realty, it would have completely defeated the whole security system which Page-Hill employed on this project. It is contended that intervening liens of subcontractors would attach. The thread of evidence upon which appellant clings for this argument is that Page-Hill would occasionally assume liability for damage to panels in the unloading of the same by its crane as found by the trial court. This could also be construed, under the evidence, as an admission of negligence by Page-Hill in causing the damage. In our opinion this argument has no merit. In fact,

the additional security of a mortgage given Page-Hill on the adjoining subdivision, upon which none of the prefabricated house units covered by the contract was to be construed, indicates that Page-Hill was not relying on retention of title until the prefabricated parts became affixed as realty. The property was not consigned to Page-Hill in Wyandotte County, Kansas; it was consigned to the appellant.

While the record, as abstracted, is confusing as to just what evidence the trial court had before it, noting some of appellant's arguments, we cannot escape the simple proposition that the trial court with all the evidence before it made findings of fact.

Insofar as we are presently concerned, the important factor to be considered is when the parties to the written sales contract intended the property interest in the merchandise to pass to the appellant. The trial court's *findings,* which are amply supported by competent and substantial evidence, are conclusive on the question and binding on this court under the familiar rule of appellate review. (*Safford v. Tibbetts,* 104 Kan. 224, 178 Pac. 618; and *General Motors Corporation v. State Comm. of Rev. & Taxation,* supra.)

The trial court specifically found upon evidence before it that Page-Hill was to furnish and *deliver prefabricated house units* "F. O. B. building site in Wyandotte County, Kansas." Its further so-called finding, that title to the prefabricated exterior and interior sections passed from Page-Hill to appellant at the instant the hooks of the crane were disconnected from the sections, is a mere conclusion which is not supported by its previous finding of fact. It is also inconsistent with its further conclusion that title to the prefabricated roof and ceiling sections and to the loose items passed at the time they were unloaded from the semi-trailer by appellant's employees. Obviously, title to all of the unassembled parts of a prefabricated house delivered as a unit was required to pass at one time under the contract.

The proper conclusion to be drawn from the trial court's finding has heretofore been stated. As to each prefabricated house unit under the contract title passed upon delivery to the appellant—the time at which the tractor was unhooked from the semi-trailer loaded with the merchandise parked at the building site. On the issues here this is practically equivalent to the trial court's conclusion that title to portions of the merchandise passed when it was unloaded from the semi-trailer. The ultimate conclusion

of the trial court that the merchandise occupied the status of tangible personal property at the time title passed to the appellant resulted in a correct decision.

A correct decision for which an erroneous reason is given by the trial court is not ground for reversal. (*La Harpe Farmers Union v. United States F. & G. Co.*, 134 Kan. 826, 8 P. 2d 354.) It matters not that some of the reasons given by the trial court in arriving at its general conclusion may have been erroneous. Where the judgment rendered by the trial court is supported by the facts in the case, and must necessarily have been rendered under the law on the facts presented, it will not be reversed because the court adopted a wrong theory of the law, and based its judgment on such erroneous theory. (*Binder v. Local Union No. 685*, 181 Kan. 799, 317 P. 2d 371.)

One further argument deserves attention. The appellant contends that the interstate journey of the merchandise herein continued until the goods became realty and as a result there was no taxable event upon which the compensating or "use" tax could apply. The appellant cites *B. & O. S. W. R. R. v. Burtch*, 263 U. S. 540, 44 S. Ct. 165, 68 L. Ed. 433, decided under the *Federal Employers' Liability Act*, which held that the loading or unloading of an interstate shipment *by the employees of a carrier* was so closely related to the interstate transportation *as to be practically* a part of it. Other cases cited by the appellant were decided under the *Fair Labor Standards Act*. (*Clyde v. Broderick*, [1944, C. C. A. 10] 144 F. 2d 348; and *Jax Beer Co. v. Redfern*, [1941, C. C. A. 5] 124 F. 2d 172.)

On the facts in the instant case the unloading of ceiling and roof sections and all loose items was done *by appellant's employees*, and even the exterior and interior sections which were handled by the crane *were also controlled, manipulated and affixed by appellant's employees.*

We have no hesitance in declaring that at some point after the interstate journey of the merchandise in question had come to an end, it occupied the status of tangible personal property and as such was used, stored or consumed by the appellant within the contemplation of the Kansas Compensating Tax Act prior to its becoming affixed as real property. The fact cannot be overcome that appellant's employees performed all the labor in constructing the house except for subcontractors working under the appellant. A contrary conclusion would be equivalent to holding that Page-

Hill constructed the house, and this would be inconsistent with the evidence before the court.

The imposition of a "use" tax by Kansas is not violative of the interstate commerce clause of the Federal constitution merely because the merchandise was transported to Kansas from the State of Minnesota. When merchandise transported in interstate commerce has arrived at its destination and is there held for use or disposal, it passes under the protection of state law and becomes subject to the taxing and police power of the state. (*State of Oklahoma, ex rel., v. H. D. Lee Co.,* 174 Kan. 114, 254 P. 2d 291; and see, also, *Montgomery Ward & Co. v. Commission of Revenue and Taxation,* 156 Kan. 408, 133 P. 2d 1008.)

The United States Supreme Court had a general use or compensating tax case before it in *Henneford v. Silas Mason Co.,* 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814. There a use tax imposed by the State of Washington was sustained, the court holding the tax was not upon the operations of the interstate commerce but upon the privilege of use after interstate commerce had ceased. A situation appropriate to the facts in this case was there presented. The following is quoted from the opinion of Justice Cardozo:

"The case before us does not call for approval or disapproval of the definition of use or enjoyment in the rules of the Commission. Those rules inform us that 'property is put to use by the first act after delivery is completed within the state by which the article purchased is actually used or is made available for use with intent actually to use the same within the state. The term "made available for use" means and includes the exercise of any right or power over tangible personal property preparatory to actual use within the state, such as keeping, storing, withdrawing from storage, moving, installing or performing any act by which dominion or control over the property is assumed by the purchaser.' A tax upon a use so closely connected with delivery as to be in substance a part thereof might be subject to the same objections that would be applicable to a tax upon the sale itself. If the rules are too drastic in that respect or others, the defect is unimportant in relation to this case. Here the machinery and other chattels subjected to the tax have had continuous use in Washington long after the time when delivery was over. The plaintiffs are not the champions of any rights except their own." (p. 583.)

In *Southern Pac. Co. v. Gallagher,* 306 U. S. 167, 59 S. Ct. 389, 83 L. Ed. 586, the United States Supreme Court held tangible personal property purchased outside California by an interstate railroad corporation for immediate or subsequent use in an interstate railway facility was subject to the California use tax. The court there said:

". . . If articles so handled are deemed to have reached the end of

their interstate transit upon 'use or storage,' no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun. . . ." (p. 177.)

A similar rule as to state taxes levied upon sales of personal property, including the reasons therefor, has been stated in *McGoldrick v. Berwind-White Co.*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876.

In *United States v. City of Detroit*, 355 U. S. 466, 78 S. Ct. 474, 2 L. Ed. 2d 424, 460, a Michigan statute, providing that when tax-exempt real property is used by a private party in a business conducted for profit the private party is subject to taxation to the same extent as though he owned the property, was upheld. (See, also, *U. S. v. Township of Muskegon*, 355 U. S. 484, 78 S. Ct. 483, 2 L. Ed. 2d 436, 460; and *City of Detroit v. Murray Corp.*, 355 U. S. 489, 78 S. Ct. 458, 2 L. Ed. 2d 441, 460.)

In conclusion we hold that the merchandise delivered by Page-Hill under the written sales contract was tangible personal property purchased from a vendor without the State of Kansas, for use, storage or consumption within the State of Kansas, for which the Compensating Tax was properly assessed against the appellant and the Order of the Tax Commission was correct.

The judgment of the trial court affirming the Order of the Tax Commission is affirmed.