Linnis Leroy STARK, Plaintiff,

v.

RESOLUTION TRUST CORPORATION, as Receiver for Franklin Savings Association, Defendant.

No. 93–2225–JWL.

United States District Court, D. Kansas.

June 17, 1994.

Howard E. Bodney, Overland Park, KS, for plaintiff.

Steven M. Leigh, Martin, Leigh & Laws, Kansas City, MO, Margaret L. Pemberton, Pemberton Law Office, Overland, KS, for defendant.

1. Defendant's motion to amend its answer (Doc. # 24) is also pending before the court. In the motion, defendant seeks to amend its answer to add K.S.A. § 9–1205 as an affirmative defense. Having reviewed defendant's summary judgment motion, the court has determined that defendant is entitled to summary judgment without reference to the statute. Accordingly, defendant's motion to amend is denied as moot.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves a breach of contract claim by plaintiff Linnis Leroy Stark against defendant Resolution Trust Corporation ("RTC") in which plaintiff alleges that defendant wrongfully and improperly paid out funds from an account he had established at Franklin Savings. This matter is currently before the court on defendant's motion for summary judgment (Doc. # 25). For the reasons set forth below, defendant's motion for summary judgment is granted.[1]

### II. Factual Background

In August of 1989, plaintiff caused a savings account to be opened at the Pleasanton branch of the Franklin Savings Association. Plaintiff initially deposited $44,000.00 into the account. The savings account was to be in plaintiff's name and in the name of his mother, Evelyn Irene Stark. Both plaintiff's name and Evelyn Starks' name were typed on the signature card opening the account. The signature card was sent to plaintiff, who executed his signature on the card. Evelyn Stark's signature was never obtained on the signature card. However, prior to the opening of the savings account in question, Evelyn Stark did have a checking account at the same branch for which she did execute a signature card.

The contractual language contained in the signature card used to open the savings account in question included a clause wherein the accountholder represented that a copy of the Terms and Conditions of Deposit Accounts and Services (the "Terms and Conditions Statement") had been received and that the accountholder agreed to be bound by the terms and conditions set forth therein. The Terms and Conditions Statement contained the following language:

When you open an account with us, you enter into a binding legal agreement with

us concerning the terms of your account. The agreement includes all of the terms, conditions, policies and procedures set forth in this Booklet, the Account Information Brochure, the Summary of Funds Availability and the Special Disclosures as they may be changed from time to time. Your agreement with us is subject to and will be interpreted under the laws of the State of Kansas, as well as applicable federal law.

\* \* \* \* \* \*

The form of ownership and each account holder's interest in an account is determined by the way the ownership of the account is shown on the signature card.

\* \* \* \* \* \*

The only persons authorized to make withdrawals from, or write checks on an account are those whose authority and signature appear on the signature card applicable to the account or on other substitute documents satisfactory to us. If desired, you can establish an account that requires more than one signature on withdrawals or checks.

\* \* \* \* \* \*

Any one of the account holders on an account held by Joint Tenants with Right of Survivorship may take action with regard to the account, including making withdrawals and deposits or using the account as security for a loan, unless otherwise designated.

During the existence of the savings account, a total of seven withdrawals and transfers from the savings account were executed. These transactions occurred during a period extending from September of 1989 through December of 1989. On January 12, 1990, the savings account was closed and Franklin Savings issued a check to Evelyn Stark for all the monies remaining in the account, $17,116.69, the proceeds of which were paid to plaintiff.

### III. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52, 106 S.Ct. at 2512.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. Id. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court must consider the record in the light most favorable to the party opposing the motion. Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir.1984), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." Celotex, 477 U.S. at 327, 106 S.Ct. at 2555.

## IV. Discussion

Plaintiff's breach of contract claim, as styled in his complaint, is that the funds deposited in the savings account were "wrongfully and improperly paid out by Franklin Savings." From this basic hypothesis, however, plaintiff has embarked on a plethora of different theories as to how the contract to maintain a savings account was breached by the defendant. These differing theories can be distilled into three main theories that have been advanced by plaintiff: (1) that the monies in the savings account were withdrawn by a person other then Evelyn Stark; (2) that, due to Evelyn Stark's failure to sign the signature card, a joint account was never established and, therefore, any withdrawals by Evelyn Stark were not authorized; and (3) that the savings account was improperly opened without the restrictions requested by plaintiff and, therefore, any withdrawals by Evelyn Stark were not authorized. For the reasons set forth below, the court finds that defendant is entitled to summary judgment on all the various theories advanced by plaintiff.

### A. The withdrawals were made by a person other than Evelyn Stark

The issue of who actually withdrew the monies from the savings account has been preserved in the pretrial order. Plaintiff has contended at various points during the pendency of the case that the monies were not withdrawn by Evelyn Stark but, in fact, were improperly withdrawn by Katie Black. Katie Black is Evelyn Stark's sister, with whom Ms. Stark was living at the time the withdrawals were made.

Defendant has produced an affidavit from Sandra Goucher, who was an Assistant Manager at Franklin Savings Association and was the person responsible for opening the savings account. Ms. Goucher avers that she personally knew both Evelyn Stark and Katie Black. Ms. Goucher further avers that every withdrawal from the savings account was made by Evelyn Stark either in person or by telephone transfer in which Ms. Stark's identity was verified by voice identification.

In his brief in opposition to defendant's motion for summary judgment, plaintiff comes forward with no evidence indicating that the withdrawals were made by someone other than Evelyn Stark, nor does he discuss the issue. The only evidence plaintiff has presented at all regarding the issue is contained in an unsworn declaration [2] which plaintiff filed in conjunction with his brief in opposition to defendant's summary judgment motion. In the unsworn declaration, plaintiff contends that he talked to Evelyn Stark upon her return to California, at which time she denied any knowledge of telephone transfers or withdrawals from the account. This statement by Evelyn Stark constitutes hearsay and would not be admissible at trial, nor is it admissible in deciding defendant's motion for summary judgment. See Fed.R.Evid. 802; Miller v. Solem, 728 F.2d 1020 (8th Cir.1984). Plaintiff also contends that he telephoned Franklin Savings on February 5, 1990, and spoke with Darla Hiet "who checked the account for Declarant and stated that some telephone transfers had been made by Katie Black, at which time Declarant informed the said Darla Hiet that no money should have been taken from the account without Declarant's knowledge, whereupon the said Darla Hiet stated that she would have Maxine Goucher telephone Declarant." Plaintiff's unsworn declaration then states that "shortly thereafter the said Maxine Goucher telephoned Declarant contending that the transfers had been authorized by Katie Black and by voice authorization on the telephone purportedly from Declarant's mother, the said Evelyn Irene Stark." The court finds that the statements plaintiff contends were made by Darla Hiet and Maxine Goucher are not inherently inconsistent. In fact, the statement alleged to have been made by Maxine Goucher is consistent with her affidavit testimony that voice authorization was received by Evelyn Stark on each of the telephone transactions. The court finds that the evidence presented in plaintiff's unsworn declaration is not suffi-

2. Kansas law provides that any matter required to be supported by sworn affidavit may be established with the same force and effect by an unsworn written declaration, dated and subscribed by the person as true, under penalty of perjury, in substantially the form provided in K.S.A. § 53–601. The court, therefore, will treat plaintiff's unsworn declaration as having the same force and effect as a sworn affidavit.

cient to satisfy plaintiff's affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### B. Evelyn Stark's Failure to Sign the Signature Card

■ Plaintiff next contends that, due to Evelyn Stark's failure to sign the signature card, a joint account was never created. Plaintiff contends that the resulting account was an individual account in his name only and that, therefore, any withdrawals purported to have been made by Evelyn Stark were unauthorized. Plaintiff fails to cite any authority for his contention other than his own bold assertion that such is the case. In fact, the court finds that a contrary result is mandated by the applicable contractual language, rules of construction, and uncontroverted facts.

■ Under Kansas law, contractual interpretations which vitiate the purpose or reduce terms of a contract to absurdity should be avoided. *See Monarch Cement Co. v. Lone Star Industries, Inc.,* 982 F.2d 1448 (10th Cir.1992); *Arnold v. S.J.L. of Kansas Corp.,* 249 Kan. 746, 749, 822 P.2d 64 (1991). Where faced with a choice of finding a contract term meaningless or meaningful, a court will opt for the latter. *In re John Gruss Co., Inc.,* 22 B.R. 236, 240 (Bankr. D.Kan.1982). Courts should avoid unreasonable interpretations where the parties' intent is vitiated. *Stanfield v. Osborne Industries, Inc.,* 232 Kan. 197, 202, 654 P.2d 917 (1982).

Plaintiff does not dispute that his intention at all times was to open a savings account in his own and Evelyn Stark's names that was to be owned by them both. Consistent with this expressed intent of plaintiff, a signature card was prepared for the savings account which listed both plaintiff and Ms. Stark as accountholders. Plaintiff then proceeded to sign the signature card that was prepared in this fashion.

Despite his expressed intention to open a savings account in both his and his mother's names, plaintiff now contends that, because Evelyn Stark failed to sign the signature card, the savings account was in actuality an individual account in his name only. To support his argument, plaintiff apparently relies on language in the Terms and Conditions Statement which provides that "[t]he form of ownership and each account holder's interest in an account is determined by the way the ownership of the account is shown on the signature card." The language relied upon by defendant makes no mention that a signature is *required* on the card, it merely states that the form of ownership is determined by the way the ownership of the account is *shown* on the signature card. The names of both plaintiff and Ms. Stark were inserted as accountholders on the signature card.

More significantly, in the court's estimation, plaintiff's contention flies in the face of language contained in the next paragraph of the Terms and Conditions Statement. That language provides that "[t]he only persons authorized to make withdrawals from, or write checks on an account are those whose authority and signature appear on the signature card applicable to the account or *on other substitute documents satisfactory to us.*" (emphasis added). It is uncontroverted that Ms. Stark's signature existed on a signature card for a joint checking account that Ms. Stark maintained at the branch. Defendant maintains that it considered the signature on the checking account signature card to be a signature on an appropriate "substitute document," thereby authorizing Ms. Stark to use the account.

In response, plaintiff makes the bald conclusion that "the Terms and Conditions of Deposit Accounts did not allow Franklin Savings Association to use substitute signatures for a person who had never signed the signature card in the first place." Plaintiff fails to cite any additional language from the Terms and Conditions Statement or any other authority to support his conclusion. In fact, the court sees no legal basis to support the conclusion propounded by plaintiff. Plaintiff's conclusion would render the language in the Terms and Conditions Statement allowing signatures on "other substitute documents satisfactory to us" meaningless. The court finds that plaintiff's asserted construc-

tion of the contractual language is unreasonable in that it would destroy the parties' intent at the time the contract was formed that the account be owned by both plaintiff and Ms. Stark, and would also render the "substitute documents satisfactory to us" language meaningless. Accordingly, the court finds that defendant is entitled to summary judgment on this issue.

### C. Restrictions on the Savings Account

■ Plaintiff's final contention is that defendant breached the account contract in that defendant allowed withdrawals to be made by Ms. Stark in contravention of restrictions plaintiff had conveyed to the defendant that he desired to have put on the account. Plaintiff asserts in his unsworn declaration that in his initial conversations with Sandra Goucher setting up the savings account, he told her that he wanted his social security number to be used as the access code to ensure the safety of the account due to the fact that Evelyn Stark was living with her sister, Katie Black, and that defendant did not trust Katie Black based upon prior experiences with her and was afraid that she would try to misappropriate the money in the account. Plaintiff contends that he explained this to Ms. Goucher on more than one occasion and that Ms. Goucher stated to him that the use of his social security number as an access code would be no problem. Based on these conversations with Ms. Goucher prior to opening the account, plaintiff now contends that any withdrawals by Ms. Stark were made without using plaintiff's social security number as an access code and therefore were unauthorized. In response to plaintiff's contentions, defendant sets forth the affidavit testimony of Ms. Goucher, in which she avers that, at the time the savings account was created, she informed plaintiff of the different options available to control the savings account, but that plaintiff refused all options except a joint account so that his mother would have full access to the monies.

■ What we have here is a classic case of disputed facts between the parties as to what negotiations and understandings took place regarding the establishment of the savings account. Were it necessary for the court to determine exactly what statements and assertions were made by each party in the negotiations setting up the account, disputed questions of material fact would prevent summary judgment. However, the court finds that any statements that may have been made by plaintiff in setting up the savings account are barred by the parol evidence rule. The written documents that were executed to open the account contain no mention whatsoever of any type of access code restriction to the savings account. It is well established in Kansas that where parties have carried on negotiations and subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. *See Hall v. Mullen,* 234 Kan. 1031, 1037, 678 P.2d 169 (1984); *Custom Built Homes Co. v. Kansas State Commission of Revenue and Taxation,* 184 Kan. 31, 37, 334 P.2d 808 (1959). Due to the failure of the written documents opening the account to include any terms regarding use of his social security number as an access code, plaintiff is prohibited from asserting that such a term was contemplated by the parties in their oral negotiations.

### V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's motion for summary judgment (Doc. # 25) is granted. It is further ordered that defendant's motion to amend its answer (Doc. # 24) is denied as moot. Accordingly, this action shall be dismissed.

**IT IS SO ORDERED.**